REVISED JULY 30, 2001

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 99-20810**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**EDWARD JOHN JOHNSTON, III, also known as Easy,**
**also known as EZ, also known as Charles Edward Johnson, III,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
For the Southern District of Texas
_____

July 13, 2001

Before HIGGINBOTHAM and DeMOSS, Circuit Judges, and FISH,[*] District Judge.

DeMOSS, Circuit Judge:

Edward John Johnston, III, a federal prisoner, moves for a certificate of appealability ("COA"), claiming that the government violated his constitutional rights and 18 U.S.C. § 201(c) when it

---

[*]District Judge of the Northern District of Texas, sitting by designation.

utilized witnesses who were either paid informants or were provided immunity from prosecution.  After both the government and Johnston consented to proceed before a magistrate judge, the magistrate judge dismissed on the merits Johnston's motion to vacate, set aside or correct sentence filed pursuant to 28 U.S.C. § 2255 and also denied his motion for a COA.  Because we conclude that the consensual delegation of § 2255 motions to magistrate judges violates Article III of the Constitution, we vacate the judgment and remand the case to the district court.

## I. BACKGROUND

Johnston was convicted of conspiracy to possess with intent to distribute cocaine, cocaine base, and marijuana.  He was sentenced to 135 months of imprisonment, five years of supervised release, a $6,000 fine, and a $50 special assessment.  On direct appeal, we affirmed Johnston's conviction and sentence.  The Supreme Court denied his petition for a writ of certiorari.  *See* ***Johnson v. United States***, 118 S. Ct. 1174 (1998).

Johnston timely filed a motion under § 2255, alleging that: 1) the district court erred in finding that Kimela Lomax's testimony was a sufficiently reliable basis for calculating Johnston's sentence; 2) the government violated 18 U.S.C. § 201(c) by paying Lomax between $6,500 and $7,000 for her testimony and by agreeing not to prosecute Roy Patterson in exchange for his testimony; and

2

3) the prosecutor engaged in misconduct during the trial. Johnston and the government both consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). The magistrate judge issued a memorandum and order denying Johnston's § 2255 motion. Johnston timely filed a notice of appeal, and he also filed a motion for leave to proceed in forma pauperis ("IFP") on appeal. The magistrate judge construed the notice of appeal as a motion for a COA and denied it, but granted Johnston's IFP motion. Thereafter, Johnston filed the instant COA motion.

## II. DISCUSSION

Before considering the substance of Johnston's motion for a COA, we must first address whether the motion is properly before us. Although neither party has challenged the magistrate judge's prerogative to finally adjudicate Johnston's § 2255 motion, we have a "special obligation to 'satisfy [ourselves] not only of [our] own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) (quoting *Steel Co. v. Citizens for a Better Env't*, 118 S. Ct. 1003, 1013 (1998)).[1] Johnston and the government consented to proceed before a magistrate judge with respect to his § 2255 motion.

---

[1]See also *Trevino v. Johnson*, 168 F.3d 173 (5th Cir.), *cert. denied*, 120 S.Ct. 22 (1999).

3

Whether their consent to proceed before the magistrate judge was sufficient to confer jurisdiction depends on a two-step analysis. *United States v. Dees*, 125 F.3d 261, 264 (5th Cir. 1997). "First, we must ask whether Congress, in passing legislation governing magistrate judges, intended for them to perform the duty in question." *Id.* In applying that first step, we should avoid interpreting any legislation governing magistrate judges in such a fashion as to engender constitutional issues if a reasonable alternative posing no such issues is evident. *See Gomez v. United States*, 109 S. Ct. 2237, 2241 (1989); *Commodity Futures Trading Comm'n v. Schor*, 106 S. Ct. 3245, 3251 (1986). But if such an alternative is not possible, then we must next consider "whether the delegation of the duty to a magistrate judge offends the principles of Article III of the Constitution." *Dees*, 125 F.3d at 264. We review each step in turn.

A.    Section 2255 is a Civil Matter for Purposes of § 636(c)

Section 636 of Title 28 recites the jurisdiction and statutory authority of a magistrate judge. Subsection (c)(1) provides that upon the consent of the parties, a magistrate judge may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case when specially designated to exercise such jurisdiction by the district court or the courts she serves. 28 U.S.C. § 636(c)(1). Here, the parties consented to proceed before the magistrate judge and the district court had specially

4

designated that a magistrate judge could oversee the present kind of litigation. *See* General Order No. 80-5, at 2-3 (S.D. Tex. 1980). The question remains whether a § 2255 proceeding constitutes a civil matter for the purposes of § 636(c).

Very few courts have directly addressed this precise issue. In *United States v. Bryson*, 981 F.2d 720, 723 (4th Cir. 1992), the Fourth Circuit indirectly found that a § 2255 proceeding is a civil matter for purposes of § 636(c) when it concluded in dicta that a magistrate judge could adjudicate a § 2255 proceeding under § 636(c). In reaching the latter conclusion and, consequently, the determination that a § 2255 proceeding is a civil matter for purposes of § 636(c), the Fourth Circuit referenced various decisions from other circuits, including ours, which implicitly held that magistrate judges could adjudicate habeas petitions under §§ 2241 and 2254 via § 636(c). *See id.* at 724; *see also Orsini v. Wallace*, 913 F.2d 474, 477 (8th Cir. 1990) ("[T]he plain language of section 636(c) . . . indicates that magistrates, upon consent of the parties and reference by the district court, have jurisdiction to order entry of judgment in a habeas case."); *Bullock v. Lucas*, 743 F.2d 244, 245 (5th Cir. 1984) (reviewing appeal from magistrate judge's disposition of habeas proceeding conducted under § 636(c)), *modified and remanded sub nom.*, *Cabana v. Bullock*, 106 S. Ct. 689 (1986); *Moore v. Tate*, 882 F.2d 1107, 1109 (6th Cir. 1989) (same); *Turner v. Henman*, 829 F.2d 612, 613 (7th Cir. 1987) (same);

5

*Sinclair v. Wainwright*, 814 F.2d 1516, 1518-19 (11th Cir. 1987) (same). Habeas petitions have customarily been viewed as civil in nature. *Hilton v. Braunskill*, 107 S. Ct. 2113, 2118 (1987); *Schlanger v. Seamans*, 91 S. Ct. 995, 998 n.4 (1971). In referring to those other circuits' decisions about magistrate judges' oversight of habeas petitions, the Fourth Circuit essentially adverted to the similarity between § 2255 and habeas petitions and implied that such a similarity signified that a § 2255 motion is a civil matter that can properly be delegated to a magistrate judge under § 636(c).

In *United States v. Hayman*, 72 S. Ct. 263 (1952), the Supreme Court discussed the history of the writ of habeas corpus in America and the evolution of § 2255. *Id.* at 268-72. The Court explained that the distinction between § 2255 and habeas corpus proceedings arose in 1948 when the Judicial Conference persuaded Congress that many of the problems surrounding the administration of federal prisoners' habeas proceedings, such as the availability of a prisoner's records, could be prevented if such proceedings were brought in the sentencing court rather than in the court of the district in which the prisoner was confined. *Id.* at 271-72; *Kaufman v. United States*, 89 S. Ct. 1068, 1071 & n.5 (1969). Section 2255 was to "minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." *Hayman*, 72 S. Ct. at 272.

6

Although we have not addressed the specific issue before us, we have generally construed a § 2255 proceeding as being civil in nature. *See **United States v. Young***, 966 F.2d 164, 165 (5th Cir. 1992) (observing that a § 2255 proceeding is governed by the sixty-day limit of Federal Rule of Appellate Procedure 4(a) because such a proceeding is civil); ***United States v. Buitrago***, 919 F.2d 348, 349 (5th Cir. 1991) ("Claims brought under § 2255 are civil actions governed by the sixty-day appeal period of Fed. R. App. P. 4(a)(1)."); *cf.* ***United States v. Cooper***, 876 F.2d 1192, 1194 (5th Cir. 1989) (noting that to the extent a coram nobis motion is like a § 2255 motion, the former is civil in nature), *abrogated on other grounds by **Smith v. Barry***, 112 S. Ct. 678 (1992). On the other hand, we have at times suggested that § 2255 motions are conceptually distinguishable from habeas proceedings, such as § 2254 petitions, for certain discrete purposes. *See **United States v. Brierton***, No. 98-10382 (5th Cir. Jan. 12, 1999) (unpublished) (concluding that § 2255 motions are distinct from habeas petitions, precluding application of the Suspension Clause); *see also **Turner v. Johnson***, 177 F.3d 390, 392 & n.1 (5th Cir.) (finding in dicta **Brierton** to be persuasive), *cert. denied*, 120 S. Ct. 504 (1999). Indeed, § 2255 as enacted recognized some distinction from habeas corpus. *See* 28 U.S.C. § 2255 (authorizing an application for writ of habeas corpus if a § 2255 motion is "inadequate or ineffective to test the legality of [a prisoner's] detention"); Brendan W.

7

Randall, Comment, United States v. Cooper: *The Writ of Error Coram Nobis and the* Morgan *Footnote Paradox*, 74 Minn. L. Rev. 1063, 1072 (1990). The **Brierton** panel relied on the advisory committee note to Rule 1 of the Rules Governing Section 2255 Proceedings for the United States District Courts to support its determination that the Suspension Clause did not apply to § 2255 proceedings because those proceedings were not habeas petitions. The advisory committee note surmised that "a motion under § 2255 is a further step in the movant's criminal case and not a separate civil action." Rule 1 of the Rules Governing § 2255 Proceedings advisory committee note.

Clearly, if we were to follow narrowly the advisory committee note's statement, then the issue would appear resolved. But other courts and commentators have suggested against overly relying on the advisory committee's note regarding any distinction between a § 2255 motion and a habeas proceeding. *See* **United States v. Means**, 133 F.3d 444, 449 (6th Cir. 1998); **United States v. Simmonds**, 111 F.3d 737, 742-43 (10th Cir. 1997); **United States v. Nahodil**, 36 F.3d 323, 328-29 (3d Cir. 1994); *see also* Charles Alan Wright, *Federal Practice and Procedure* § 590, at 422 (1982) (observing that, prior to the adoption of the Rules Governing § 2255, § 2255 proceedings had widely been presumed to be independent civil actions and noting the limited amount of legislative history in support of the advisory committee note's position). Instead of discerning an inviolable distinction with definite parameters, many

of those courts have concluded that a § 2255 motion is a hybrid, with characteristics indicative of both civil and criminal proceedings. *See* **Means**, 133 F.3d at 448-49; **Simmonds**, 111 F.3d at 742-43. Thus, those courts have not placed undue importance on the advisory committee note but have realized that "[t]he precise nature of § 2255 proceedings . . . remains highly dependent on the proceedings' context." *Id.* at 743.

We, likewise, have found consistency in defining § 2255 proceedings an elusive task. *Compare* **Young**, 966 F.2d 164*, with* **United States v. Cole**, 101 F.3d 1076 (5th Cir. 1996) (holding that the Prison Litigation Reform Act's procedures concerning payment of fees by prisoners seeking to proceed in forma pauperis in civil suits not applicable to § 2255 proceedings). Accordingly, we do not believe that the advisory committee note mandates a finding that a § 2255 is not a civil matter for purposes of § 636(c).[2] Rather, the determination of whether a § 2255 proceeding is civil or criminal in nature is dependent on the context of the proceedings, including the legislative and statutory framework in which the § 2255 proceeding must be examined.

Here, the context of the issue centers on the jurisdictional provisions pertaining to magistrate judges. Congress amended the Federal Magistrates Act in 1979 to include § 636(c), the section on

---

[2]With this determination, we do not question whether the **Brierton** panel's ruling was correct.

9

a magistrate judge's jurisdiction over consensual civil matters. It did so "to improve access to the federal courts." H.R. Conf. Rep. No. 96-444, at 1 (1979). In particular, Congress sought to protect the less-advantaged from the "vicissitudes of adjudication delay and expense" and to help the federal court system "cope and prevent inattention to a mounting queue of civil cases pushed to the back of the docket." S. Rep. No. 96-74, at 3 (1979). That intent and legislative history suggest that the terms "civil matter" in § 636(c) should be broadly interpreted to allow for increased availability of adjudications by magistrate judges. Consequently, at least with respect to § 2255 proceedings, the scope of § 636(c) reveals that such proceedings are civil in nature. Additional support for this conclusion may be derived from § 636(b), which provides authority to magistrate judges to conduct hearings and to submit to the district court proposed findings of fact and recommendations for the disposition, by the district court, of applications for post-trial relief made by individuals convicted of criminal offenses. *See* 28 U.S.C. § 636(b)(1)(B). Although under § 636(b) a magistrate judge does not have authority to enter a final judgment, the grant of authority to review matters pertaining to all post-trial relief, and not just habeas petitions, seems to reflect a general legislative bias towards allowing magistrate judge oversight of § 2255 proceedings. In light of that statutory framework and legislative intent, we hold that for

10

purposes of § 636(c), a § 2255 proceeding is a civil matter over which Congress intended magistrate judges to exercise jurisdiction upon consent of the parties.

B.   Article III Strictures Preclude Delegation of § 2255 Proceedings to Magistrate Judges

Even though § 2255 proceedings may be presumed civil in nature for purposes of § 636(c), we must still determine whether delegating those proceedings to magistrate judges comports with the strictures of Article III.  Article III, Section 1 of the Constitution provides that "the judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish" and that "[t]he Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office."  This constitutional provision serves two purposes: 1) "to safeguard litigants' right to have claims decided before judges who are free from potential domination by other branches of government" and 2) "to protect the role of the independent judiciary within the constitutional scheme of tripartite government." *Schor*, 106 S. Ct. at 3255 (citations and internal quotation marks omitted).  The former concerns a defendant's personal right to have his case heard by an Article III judge.  *Dees*, 125 F.3d at 266.  That right may

11

be waived.[3]   *Id.*   The second purpose pertains to "certain structural guarantees which ensure respect for separation-of-powers principles."   *Id.*   Article III, Section 1 seeks to ensure such respect "by barring congressional attempts to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating' constitutional courts, and thereby preventing the encroachment or aggrandizement of one branch at the expense of the other." *Schor*, 106 S. Ct. at 3256 (citations and internal quotation marks omitted).   When these Article III guarantees are at issue, consent or waiver by the parties to proceed before a non-Article III officer diminishes but does not eliminate the constitutional concerns associated with the delegation of judicial authority to non-Article III tribunals because the guarantees serve institutional interests that the parties cannot be expected to protect. *See* *id.* at 3257, 3259.   Because Johnston consented to the use of a magistrate judge in his case, thereby waiving any personal

---

[3]Waiver, though, may not always be conclusive with respect to this first concern "if the alternative to the waiver were the imposition of serious burdens and costs on the litigant." *Pacemaker Diagnostic Clinic, Inc. v. Instromedix, Inc.*, 725 F.2d 537, 543 (9th Cir. 1984) (en banc).   "If it were shown that the choice is between trial to a magistrate or the endurance of delay or other measurable hardships not clearly justified by the needs of judicial administration, we would be required to consider whether the right to an Article III forum had been voluntarily relinquished." *Id.; see also Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037, 1042 (7th Cir. 1984) (requiring availability of trial before an Article III judge as a realistic and viable alternative to sustain constitutional challenge against reference of civil matters to magistrate judges).

12

right he may have had to have his case reviewed by an Article III judge, the only matter before us is whether the delegation of the § 2255 motion pursuant to § 636(c) offended the structural guarantees of Article III.

The Supreme Court has never directly addressed the constitutionality of civil trial authority of magistrate judges, but it has made passing reference to the authority of such judges to preside over civil jury trials with the consent of the parties under § 636(c) without commenting upon its constitutionality in *Gomez v. United States*, 109 S. Ct. 2237 (1989), and later again in *Peretz v. United States*, 111 S. Ct. 2661 (1991). *See* Magistrate Judges Division of the Administrative Office of the United States Courts, *A Constitutional Analysis of Magistrate Judge Authority*, 150 F.R.D. 247, 303 (1993). On the other hand, almost all of the circuit courts, including ours, have specifically addressed that issue and concluded that magistrate judges' jurisdiction over civil cases with the consent of the parties does not violate the Constitution. *See* *Puryear v. Ede's Ltd.*, 731 F.2d 1153 (5th Cir. 1984); *Bell & Beckwith v. United States*, 766 F.2d 910 (6th Cir. 1985); *Gairola v. Virginia Dep't of Gen. Servs.*, 753 F.2d 1281 (4th Cir. 1985); *D.L. Auld Co. v. Chroma Graphics Corp.*, 753 F.2d 1029 (Fed. Cir. 1985); *Fields v. Washington Metro. Area Transit Auth.*, 743 F.2d 890 (D.C. Cir. 1984); *Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037 (7th Cir. 1984); *Lehman Bros. Kuhn Loeb, Inc.*

13

*v. Clark Oil & Refining Corp.*, 739 F.2d 1313 (8th Cir. 1984); *Collins v. Foreman*, 729 F.2d 108 (2d Cir. 1984); *Goldstein v. Kelleher*, 728 F.2d 32 (1st Cir. 1984); *Campbell v. Wainwright*, 726 F.2d 702 (11th Cir. 1984); *Pacemaker Diagnostic Clinic, Inc. v. Instromedix, Inc.*, 725 F.2d 537 (9th Cir. 1984) (en banc); *Wharton-Thomas v. United States*, 721 F.2d 922 (3d Cir. 1983); *cf. United States v. Dobey*, 751 F.2d 1140 (10th Cir. 1985) (quoting favorably from *Pacemaker* and *Collins*). In *Puryear*, we summarily found § 636(c) to be constitutional, referring to four decisions by our sister courts: *Pacemaker*, *Goldstein*, *Collins*, and *Wharton-Thomas*. *See Puryear*, 731 F.2d at 1154. Of those four decisions, the seminal one for purposes of Article III analysis is *Pacemaker*, an opinion authored by then-Judge, now Justice Kennedy. Sitting en banc, the Ninth Circuit noted two concerns raised by § 636(c): 1) whether, by providing for reference of court cases to magistrate judges, Congress invaded the power of a coordinate branch or permitted an improper abdication of that branch's central authority; and 2) whether the requirement of entry of judgment by a non-Article III jurist improperly directs the judiciary in the performance of its duties. *Pacemaker*, 725 F.2d at 544. To evaluate those concerns, the Ninth Circuit set forth the following standard: did the statute prevent or substantially impair performance by the judiciary of its essential role under the Constitution? *Id.* "If the essential, constitutional role of the

14

judiciary is to be maintained, there must be both the appearance and the reality of control by Article III judges over the interpretation, declaration, and application of federal law." *Id.* That control must be more than simple appellate review. *Id.* Concluding that the statute covering magistrate judges' jurisdiction invests the Article III judiciary with extensive administrative control over the management, composition, and operation of the magistrate judge system, the *Pacemaker* court found no constitutional objection. *Id.*

Assuming that § 2255 motions are civil matters for purposes of § 636(c), we should be able to rely on *Puryear* and *Pacemaker*, complete the syllogism that has been established, and conclude that the delegation of § 2255 motions to magistrate judges is constitutional. That is, because § 2255 motions are civil matters and because consensual delegation of civil matters to magistrate judges has been found to be constitutional, delegation of § 2255 motions is also constitutional. But as we previously noted about § 2255 motions, what may seem so logical and straightforward is not always the ineluctable result. At least for the purposes of Article III analysis, a § 2255 motion does not easily comport with the average civil case or even another quasi-civil proceeding such as a § 2254 petition and, consequently, presents three major problems besides those problems already well-addressed in the opinions on consensual delegation of civil cases.

15

First, unlike the average civil case or a § 2254 proceeding, a § 2255 motion directly questions the validity of a prior federal court ruling. The average civil case involves a dispute over the rights and obligations of the litigants to the case and does not generally concern prior legal rulings by another judge. Section 2254 proceedings do attack prior judgments, but they pertain to state court criminal cases. As such, in § 2254 proceedings, concerns over comity and federalism are more pronounced than any concerns over the structural guarantees of Article III. That is especially true when one considers that few states, if any, have the lifetime tenure and undiminishable compensation, which form the bulwark of the judiciary's quality and independence so integral to Article III. Under § 2255, a federal prisoner may move to vacate, set aside, or correct a sentence that was imposed by a federal judge, and principles of res judicata do not apply in such a proceeding, *see United States v. Reyes*, 945 F.2d 862, 864 (5th Cir. 1991). If the parties to a § 2255 motion consent to proceed before a magistrate judge, that magistrate judge could attack the validity of an Article III judge's rulings. Such an act clearly raises Article III concerns because judges without lifetime tenure and undiminishable compensation would have controlling authority. *See*, *e.g.*, James G. Woodward & Michael E. Penick, *Expanded Utilization of Federal Magistrate Judges: Lessons from the Eastern District of Missouri*, 43 St. Louis U. L.J. 543, 555-56 (1999) (finding awkward

and ill-advised a magistrate judge's disposition of a § 2255 proceeding because such an assignment to a magistrate judge would empower a subordinate judicial officer to review and perhaps vacate or modify a sentence that had been ordered by an Article III judge).

On the other hand, we have previously held that once the parties provide consent and the district court specifically designates a magistrate judge to conduct the civil proceedings, the magistrate judge is not bound by the prior opinions expressed by the district court in the case. *See* **Cooper v. Brookshire**, 70 F.3d 377, 378 n. 6 (5th Cir. 1995); Charles Alan Wright et al., *Federal Practice and Procedure* § 3072, at 416 (2d ed. 1997) ("Certain rulings by a presiding judge are inherently subject to reconsideration, such as limits on discovery. Should parties consent to proceedings before a magistrate judge after the assigned district judge has made such a ruling, the magistrate judge must have authority to modify the order."); *see generally* **Hill v. City of Pontotoc**, 993 F.2d 422, 425 (5th Cir. 1993) (noting that judges of coordinate jurisdiction will defer to another's interlocutory rulings out of deference, not obedience). *But see* **Taylor v. National Group of Companies, Inc.**, 765 F. Supp. 411, 413-14 (N.D. Ohio 1990) (finding that a magistrate judge's jurisdiction is not merged with that of the district court to vest the magistrate with authority to reconsider and set aside a prior decision of the

17

district court).  We may, however, distinguish *Cooper* from cases involving § 2255 motions as *Cooper* was a civil action and concerned the overturning of the district court's statute of limitations ruling.  70 F.3d at 378.  By vacating under § 2255 a district court's criminal sentence, a magistrate judge does not merely overturn another judge's civil ruling; instead, she directly places herself in the murky confines of federal criminal law and procedure, which in and of itself may violate Article III.  *See infra*.  Thus, although a magistrate judge may have the authority to reconsider a district court's prior decision in a civil case, that does not necessarily mean that a magistrate judge has the authority to do the same in a § 2255 proceeding upon receiving the parties' consent.

Even if the ability of a magistrate judge to overturn an Article III jurist's prior ruling does not raise Article III issues, the notion that a § 2255 proceeding is a further step in the movant's criminal case, *see* Rule 1 of the Rules Governing § 2255 Proceedings advisory committee note, means that the consensual delegation of such a proceeding may unwittingly embroil a magistrate judge in the unconstitutional conduct of a felony trial, raising the second major problem.  One guiding principle of our previous Article III analysis has been that we doubt that a non-Article III judge can preside over a felony trial without violating

18

the strictures of Article III.[4]  ***Dees***, 125 F.3d at 267.  That is because: 1) a felony trial is a complex affair requiring close oversight of delicate constitutional questions; 2) a district court cannot adequately review a magistrate judge's actions in an entire felony trial; and 3) by giving away critical criminal jurisdiction, federal judges risk devitalizing their coordinate branch of government, thereby upsetting our constitutional balance.[5]  ***Id.*** Thus, whenever an act delegated to a magistrate judge encroaches upon a district court's exclusive felony trial domain, Article III concerns move to the forefront.  ***Id.***  No one seriously questions that the issue of sentencing is an integral part of the felony criminal process.  *See*, *e.g.*, ***Gardner v. Florida***, 97 S. Ct. 1197, 1205 (1977) (describing sentencing as "a critical stage of the

---

[4]We recognize that § 636(a) provides magistrate judges the authority to enter final judgments in misdemeanor criminal matters with the consent of the parties.  Whether such a delegation is constitutional is less in doubt as "petty offenses were not historically considered 'crimes' at common law" and were "summarily disposed of by judicial officers other than Article III judges." 150 F.R.D. at 304; *see also* ***Peretz***, 111 S. Ct. at 2666-67 (referring to Congressional intent to give magistrate judges consensual misdemeanor trial authority in 1979 as partial justification for permitting magistrate judges the authority to conduct consensual felony voir dire).

[5]Parties to a civil case have options, such as arbitration, which suggest that other quasi-judicial forums like proceedings before magistrate judges may be appropriate forums for consensual civil actions.  Federal criminal cases, however, reside in the federal court system, i.e., the Article III district courts.  The police power of the United States is generally not abdicated to another forum.  Accordingly, matters relating to federal criminal matters evince greater Article III concerns than do those linked to civil cases.

criminal proceeding"). Admittedly, the Supreme Court has allowed for the consensual delegation of voir dire, another integral component of the felony trial. *Peretz*, 111 S. Ct. at 2671. Likewise, we have concluded that the delegation of plea allocutions is proper and does not violate Article III. *Dees*, 125 F.3d at 269. But in the case of voir dire, a district court retains the ultimate decision about whether to empanel the selected jury and, consequently, less Article III concerns exist. *Id.* at 267. As for plea allocutions, they are more ministerial in nature and do not form an essential component of the actual trial. *Id.* at 268. Sentencings are not ministerial in nature and require the legal judgment and acumen of a learned jurist, who may, at times must, do the unpopular and, therefore, may need the shield of independence afforded Article III jurists. Accordingly, in our view, the act of sentencing does not compare with voir dire or plea allocutions for purposes of Article III. Therefore, if a magistrate judge were unable to do felony sentencings, then it would be odd for such a judge to have the power under § 2255 to resentence or to even vacate a prior sentence resulting from a felony conviction.

Third and finally, the consensual delegation of § 2255 proceedings under § 636(c) presents reviewability problems severe enough to create the impression that magistrate judges are not adjuncts, but are independent of Article III control. The Supreme Court and our sister courts have consistently asserted that the

ability of Article III district courts to control and review a magistrate judge's decision provides compelling support for the constitutionality of increased magistrate judge participation in the federal court system. *See* *Peretz*, 111 S. Ct. at 2669-70; *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 102 S. Ct. 2858, 2874-78 (1982); *United States v. Raddatz*, 100 S. Ct. 2406, 2417 (Blackmun, J., concurring); *Dees*, 125 F.3d at 268; *Geras*, 742 F.2d at 1043; *Collins*, 729 F.2d at 114-15; *Pacemaker*, 725 F.2d at 546; *Wharton-Thomas*, 721 F.2d at 926-27. For example, the judges of the district courts have the authority to appoint magistrate judges and may remove them for cause. *See* 28 U.S.C. § 631(a) & (i). The district court must specially designate the magistrate judge before consensual delegation of civil matters may occur. *Id.* § 636(c)(1). And upon a showing of good cause, the district court has the power to vacate the reference of a civil matter. *Id.* at § 636(c)(4); *see also* Charles Alan Wright et al., *Federal Practice and Procedure* § 3072, at 416 (2d ed. 1997) ("The power of the district judge to vacate a reference is an important feature of the legitimacy of section 636(c) referrals under Article III . . . ."). Thus, the argument has run that the activities of the magistrate judge do not endanger the independence of the judiciary because the magisterial scheme allows for a sufficient amount of control and review by Article III jurists. *Peretz*, 111 S. Ct. at 2669-70. But if a magistrate judge were allowed to enter a final order in a

21

consensual § 2255 proceeding, that order would not be reviewable by the district court. Although that has not stopped us or our sister circuits from finding the consensual delegation of civil matters to be constitutional due to the other mechanisms of control available to district courts, we discern an additional twist with respect to the nonreviewability of consensual § 2255 motions, which warrant a different conclusion. As previously noted, unlike the average consensual civil matter, a § 2255 proceeding attacks the validity of and may undermine a prior decision of an Article III judge. Allowing magistrate judge authority over such proceedings turns the concept of reviewability on its head. Rather than district court review and control, consensual magistrate judge authority over § 2255 motions creates the ironic situation whereby non-Article III magistrate judges review and reconsider the propriety of rulings by Article III district judges, but do not themselves have to worry about review.[6]

---

[6]This is even more telling in light of the fact that the Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, repealed § 636(c)(4) & (5), which previously provided the right to appeal directly to the district court. As a result, civil matters litigated pursuant to § 636(c) can only be reviewed on appeal by the court of appeals. At least before 1996, one could make the specious argument that the district court would, or rather more like could, have some review over a consensually delegated civil matter and, therefore, demonstrate sufficient reviewability for purposes of Article III. Of course, this is an unavailing argument in itself because "[t]he required control must be more than simple appellate review." *Pacemaker*, 725 F.2d at 544 (citing *Northern Pipeline*, 102 S. Ct. at 2879 n.39).

22

The fact that a magistrate judge may essentially overturn the judgment of an Article III district court in a criminally related case detracts from the reasons supporting constitutionality of consensually delegated civil matters. Consensual delegation of § 2255 proceedings do not evince sufficient reviewability and control for purposes of Article III. A magistrate judge may vacate the ruling of a district court judge, but a district court essentially cannot do anything to the magistrate judge. We realize that the district court could stop a magistrate judge from having its own criminal judgments vacated by: 1) not appointing magistrate judges; 2) not originally referring § 2255 proceedings; or 3) vacating the civil reference under § 636(c)(4), but those possibilities are a poor measure of control. If the only way to review and to control something so starkly at odds with Article III, like having magistrate judges review district court rulings but not vice versa, is to do any of the three listed options, then there is no sense for having a magisterial scheme dealing with the consensual delegation of § 2255 proceedings. The only options for reviewability and control are untenable with a consensual delegation of § 2255 proceedings to magistrate judges.

The primary structural guarantee of Article III is to ensure respect for separation-of-powers principles "by barring congressional attempts to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating' constitutional courts, and thereby preventing the encroachment or aggrandizement of one

23

branch at the expense of the other." *Schor*, 106 S. Ct. at 3256 (citations and internal quotation marks omitted). We recognize that the magisterial scheme is said not to be the "paradigmatic separation of powers case, where the integrity of one branch is threatened by another which attempts an arrogation of power to itself." *Pacemaker*, 725 F.2d at 544. That is because in situations like the consensual delegation of general civil matters, the authority of Article III courts is not challenged. Instead, the only conceivable threat to the independence of the judiciary concerns the danger to the independence of the magistrate judges from within, rather than from without, the judiciary itself in the form of Article III district judges. *Cf.* *Raddatz*, 100 S. Ct. at 2417 (Blackmun, J., concurring). But when magistrate judges, who do not have lifetime tenure or undiminishable compensation, may reconsider and vacate Article III judges' rulings pertaining to criminal matters, particularly felony convictions, we tread in different waters. By allowing consensual delegation of § 2255 proceedings to magistrate judges, we exact a deadly blow to the vitality and strength of a independent judiciary. Congress, through its legislative powers to enact laws regulating and controlling the term, the salary, the qualifications, the duties, and the establishment of magistrate judges,[7] has then the

---

[7]Specific statutory provisions do provide for certain guidelines with respect to the term, the salary, the qualifications, the duties, and the establishment of magistrate judges. *See* 28 U.S.C.

24

capability to direct the affairs of Article III courts. That cannot be allowed and requires our finding that the consensual delegation of § 2255 proceedings to magistrate judges under § 636(c) is unconstitutional.

## III. CONCLUSION

For the foregoing reasons, we conclude that the consensual delegation of § 2255 motions to magistrate judges violates Article III of the Constitution. As a result, we do not address the merits of Johnston's appeal, but vacate the judgment entered by the magistrate judge and remand the case to the district court for proceedings consistent with this opinion.

ENDRECORD

---

§§ 631-636. For example, the salary of a magistrate judge may not be reduced during the term in which she is serving below the salary fixed for her at the beginning of that term. *Id.* § 634. But those provisions may always be repealed.

25

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring:

I share the majority's concern over the constitutionality of allowing magistrate judges to dispose of section 2255 motions. I would not, however, reach this constitutional question. *See*, *e.g.*, *Zadvydas v. Davis*, 121 S. Ct. 2491, 2001 WL 720662, at *7 (U.S. June 28, 2001); *United States v. Ford*, 824 F.2d 1430, 1435 (5th Cir. 1987) ("[W]e insist upon clear congressional expression when the reach of [a] claimed reading provokes issues regarding constitutionally mandated spheres of governmental power.").

It is axiomatic that only an Article III judge can be vested with the power to conduct a dispositive review of the judgment of another Article III court.[8] Review by the Court of Appeals of a magistrate judge's final ruling upon a section 2255 petition offers little protection for the structural component of Article III, allowing the parties to agree that an Article III judgement will be subject to review by a non-Article III judge. The force of these concerns should not loosen our restraint. Rather, because we can do so in a principled manner, we ought to read the challenged congressional act to avoid this constitutional ruling.

I would read 28 U.S.C. § 636(c) to preclude granting magistrate judges the authority to render final judgment in an

---

[8] *See Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103 (1948) ("Judgments within the powers vested in courts by the Judiciary Article of the Constitution may not lawfully be revised, overturned or refused faith and credit by another Department of Government.").

attack under 28 U.S.C. § 2255 upon a final judgment of conviction, regardless of the parties' consent.

The impetus to push the trial of civil cases in federal courts upon magistrate judges is puzzling. According to data compiled by the Administrative Office, each active Article III judge presided over an average of only nine civil trials last year;[9] the median length of a civil trial was one or two days.[10] The criminal docket offers little explanation, for Article III judges presided over an average of only six criminal trials, jury and bench.[11] Despite mounting "case" filings, the number of civil and criminal trials has declined markedly over the past thirty years in all categories of cases.[12] The shrinking number of trials is the subject of a

---

[9] *See* Administrative Office of the United States Courts, "U.S. District Court—Judicial Caseload Profile," *in Federal Court Management Statistics 2000* (2001), *available at* http://www.uscourts.gov/cgi-bin/cmsd2000.pl; Leonidas Ralph Mecham, *2000 Annual Report of the Director: Judicial Business of the United States Courts 2000* app. tbls. C-4, D-4 (2001).

[10] *See* Mecham, *supra* note 2, at app. tbl. C-8. This estimate derives from Administrative Office data based on a generous definition of "trial," which includes "miscellaneous cases, hearings on temporary restraining orders and preliminary injunctions, hearings on contested motions and other contested proceedings in which evidence is introduced." *Id.*

[11] *See* Administrative Office, *supra* note 2; Mecham, *supra* note 2, at app. tbl. D-4.

[12] This assessment is based on data contained in current and past editions of the *Annual Report of the Director: Judicial Business of the United States Courts.*

27

larger debate over the changing role of the United States district courts.[13]

This is not to suggest that the Article III trial judges are not working. Rather, this phenomenon calls into question the rationale for the type of work we urge upon magistrate judges. More to the point, the empirical data highlights the wisdom of the structural component of Article III, limiting as it does, or should, the authority of consent by the parties. It is one thing for two parties to agree to resolve their civil dispute outside the courthouse. It is another to accept their agreement to proceed privately while remaining inside the courthouse. And we have never accepted a purely private resolution of criminal matters. A proceeding to decide if a criminal conviction will stand is a criminal proceeding in every relevant practical and functional sense, however we choose to label it.

I join the holding that petitions for relief from federal criminal convictions under 28 U.S.C. § 2255 may not be referred to a magistrate judge for final disposition.

---

[13] *See*, *e.g.*, Judith Resnik, *Trial As Error, Jurisdiction As Injury: Transforming the Meaning of Article III*, 113 Harv. L. Rev. 924 (2000).