**John SINDE, Petitioner**

v.

**Susan GERLINSKI, Warden, LSCI–Allenwood, Respondent**

**No. CIV.A.3:02–1043.**

United States District Court, M.D. Pennsylvania.

March 26, 2003.

John Sinde, White Deer, PA, pro se.

Matthew E. Haggerty, AUSA, Office of U.S. Atty., Scranton, PA, for respondent.

### MEMORANDUM AND ORDER

MANNION, United States Magistrate Judge.

### I. BACKGROUND

On June 17, 2002, the petitioner, an inmate at the Low Security Correctional Institution at Allenwood, ("Allenwood"), White Deer, Pennsylvania, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He challenges the process provided to him at a Disciplinary Hearing Officer, ("DHO"), hearing, as well as the sufficiency of the evidence relied upon by the DHO to find him guilty. The petitioner further complains that he did not receive a hearing every thirty days while he was in segregation, and that, after his release from segregation and before the DHO hearing, his phone calls were unjustly limited to one call per week. The petitioner is seeking expungement of the institutional incident report and restoration of privileges and good conduct time credits lost as a result of the action taken against him by the DHO. (Doc. No. 1).

On July 17, 2002, a show cause order was issued. (Doc. No. 7). A response to the show cause order, along with supporting exhibits, were filed by the respondent on August 5, 2002. (Doc. Nos. 9 & 10).

By way of background, the documents submitted by the parties indicate that on February 13, 2001, the petitioner was interviewed by the Federal Bureau of Investigations, ("FBI"), which was conducting

an investigation into telephone calls made from a black Nokia pre-paid cellular telephone found hidden inside a tractor, during a search of an equipment barn at Allenwood. During the investigation, the telephone numbers dialed from the Nokia cellphone were cross-referenced with the list of inmate approved telephone numbers kept at Allenwood.

In performing this cross-reference, it was determined that one of the telephone numbers called from the Nokia cellphone was on the petitioner's "approved list." Further investigation revealed that the telephone number was *only* on petitioner's approved list. In other words, no other inmate had this telephone number on his approved list. In addition, the investigation revealed that two other inmates were interviewed concerning use of the cellphone. Both of those inmates admitted to authorities that all three men (including petitioner) had used the cellphone. (Doc. No. 10, p. 11).

On the same day, February 13, 2001, an incident report was written accusing the petitioner of "Use of Telephone for Abuses Other Than Criminal Activity," in violation of Bureau of Prisons, ("BOP"), Code 297, and for "*Conduct Which Disrupts or Interferes With the Security of the Facility*," in violation of BOP Code 399. (Doc. No. 10, p. 5). BOP staff did not serve the incident report upon the petitioner at that time as it deferred the administrative investigation of the incident pending a criminal investigation by the FBI. (Doc. No. 10, p. 6). On November 8, 2001, the FBI, having concluded the investigation (and apparently declined criminal prosecution), referred the matter back to the institution for administrative action. (Doc. No. 10, p. 6). The following day, November 9, 2001, a

copy of the incident report was served upon the petitioner. (Doc. No. 10, p. 5).

The Unit Discipline Committee's, ("UDC"), hearing on the matter was delayed because the UDC requested additional documents from the investigating lieutenant. After acquiring the additional documents, on November 29, 2001, the investigating lieutenant returned the matter to the UDC. (Doc. No. 10, p. 6). On December 4, 2001, the petitioner received a memo from the respondent, Warden Gerlinski, which advised the plaintiff that the delay in holding his hearing was due to the incident being referred to the FBI for possible prosecution and the request for additional information. (*Id.*). In compliance with Program Statement 5270.07 [1], the warden at FPC–Allenwood granted an extension of time for the UDC hearing. (*Id.*).

A UDC hearing, on the charges, was held on December 5, 2001. The charges, however, were then referred to the DHO for disposition, because of their seriousness. (Doc. No. 10, p. 5). On the same day, the petitioner received notice of the DHO hearing. (Doc. No. 10, p. 7). On this form notice, the petitioner requested that Mr. Steimling, a General Foreman, represent him at his hearing before the DHO. In addition, he requested that a fellow inmate testify as a witness on his behalf. (*Id.*). This form notice was signed by the petitioner on December 5, 2001. (*Id.*). On the same day, the petitioner received, signed and dated an "Inmate Rights at Disciplinary Hearing" form which advised him of his rights at the DHO hearing. (Doc. No. 10, p. 8).

On December 18, 2001, the DHO hearing was held. (Doc. No. 10, p. 9). The

---

1. Program Statement 5270.07 provides that a delay in holding a UDC hearing of over three days, after staff becomes aware of the incident, must be documented in writing. Further, the inmate must be advised of the delay. (Doc. No. 10, p. 6).

petitioner was present at the hearing, along with his staff representative, Mr. Steimling, and his inmate witness. Both Mr. Steimling and the inmate testified on the petitioner's behalf. (Doc. No. 10, pp. 9–10). After considering the evidence presented at the hearing, including the incident and investigation reports, photocopies of pictures of the tractor and cellphone, and the testimony of the petitioner and his witnesses, the DHO determined that the petitioner had violated Code 297, "Use of Telephone for Abuses Other Than Criminal Activity." (Doc. No. 10, pp. 10–11).

The petitioner was sanctioned twenty-seven days good time conduct; twenty-one days of disciplinary segregation, (which was suspended pending 180 days of clear conduct); and, one year loss of telephone privileges. (Doc. No. 10, p. 11). On December 21, 2001, the petitioner received a copy of the written report of the DHO, the evidence relied upon and the reasons for the disciplinary sanctions administered. (Doc. No. 10, p. 12).

## II. DISCUSSION

"(A federal) court, ... will raise ... subject matter jurisdiction on its own motion." *Morel v. INS*, 144 F.3d 248, 251 (3d Cir. 1998). Hence, this court has an obligation to raise questions of jurisdiction even when not disputed by the parties. In the instant case, the petitioner filed a "Consent to Jurisdiction by United States Magistrate Judge" on June 8, 2002. The consent was docketed on June 24, 2002. The respondent also submitted a consent which was docketed on July 23, 2002. As a result of these consents, the district court entered an "order of reference" (Doc. No. 8) on July 31, 2002, referring the matter in accordance with 28 U.S.C. § 636(c) and Fed. R.Civ.P. 73, to the undersigned.

In pertinent part, 28 U.S.C. § 636(c)(1) states:

(c) Notwithstanding any provision of law to the contrary -

(1) Upon the consent of the parties, a full-time United States Magistrate (Judge) ... may conduct any or all proceedings in a jury or non-jury civil matter and order the entry of judgment in the case when specifically designated to exercise such jurisdiction by the district court or courts he serves ...

Habeas corpus proceedings are "civil proceeding(s, where) someone's custody, rather than mere civil liability, is at stake." *O'Neal v. McAninch*, 513 U.S. 432, 433, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).

Recently, two circuit courts have offered differing opinions concerning whether a magistrate judge has jurisdiction over a "habeas corpus" proceeding. More specifically, whether a delegation of judicial power under 28 U.S.C. § 636(c) to adjudicate habeas corpus proceedings is an unconstitutional delegation in violation of Article III. In *Farmer v. Litscher*, 303 F.3d 840 (7th Cir.2002), the court held that habeas corpus proceedings brought pursuant to 28 U.S.C. § 2254 do not implicate the constitutional division between Article III judges and non-Article III judges. The court came to this result, *inter alia*, because § 2254 petitions involve attack on state court judgments and not those of Article III federal judges.

However, in a habeas corpus proceeding brought pursuant to 28 U.S.C. § 2255, the Fifth Circuit held that magistrate judges do not have the authority, even with consent of the parties pursuant to 28 U.S.C. § 636(c), to adjudicate these petitions. *United States v. Johnston*, 258 F.3d 361 (5th Cir.2001). Because a § 2255 motion normally "questions the validity of a prior federal court ruling" a magistrate judge could improperly attack the validity of an Article III judge's rulings. *Id.* at 368.

According to the court, "such an act clearly raises Article III concerns because judges without lifetime tenure and undiminishable compensation would have controlling authority." *Id.* at 369 (internal citations omitted). As such, that court held that "the consensual delegation of 2255 motions to magistrate judges violates Article III of the constitution". *Id.* at 372.[2]

█ Our case is not a § 2255, nor a § 2254, but rather a § 2241 petition. It does not appear that our Circuit has ruled on whether an inmate may consent to the jurisdiction of a United States Magistrate Judge for purposes of adjudicating a petition brought pursuant to 28 U.S.C. § 2241. In reviewing the above case law, the court finds that a § 2241 petition, under the facts and circumstances of the instant case, is more analogous to a § 2254 petition than it is to a § 2255 petition. A review of Mr. Sinde's petition indicates that he is not challenging a sentencing decision of a district court, but rather is challenging the DHO's ability to sanction him good time credits for violations of prison rules. Whether this court finds in favor of the petitioner and directs the warden to reinstate his good time credits, or whether the court finds in favor of the warden and affirms the decision of the DHO, neither decision implicates the validity, sentence or judgment of a prior district court ruling. As such, this court finds no constitutional infirmity in allowing a magistrate judge to render a final decision in a "habeas corpus" proceeding brought pursuant to 28 U.S.C. § 2241.

Other circuits have "implicitly held that magistrate judges could adjudicate petitions under § 2241 and 2254 via § 636(c)." *Id.* at 364. (Citing *U.S. v. Bryson,* 981 F.2d 720, 723 (4th Cir.1992.)) For the

foregoing reasons, the court finds that it does have subject matter jurisdiction over the instant § 2241 petition.

Initially, the respondent argues the claims relating to the frequency of segregation review hearings or the number of telephone calls an inmate is permitted are not properly brought before the court in a petition for a writ of habeas corpus. (Doc. No. 9, pp. 7–10). The court agrees.

█ A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 498–499, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). To the extent that the plaintiff challenges the frequency of his segregation review hearings or the number of telephone calls he is permitted to make, these claims do not **"challenge the very fact or duration of the confinement itself."** *Leamer v. Fauver,* 288 F.3d 532 (3d Cir.2002)(emphasis in original). As such, they are inappropriately raised by way of a habeas corpus petition. Instead, these claims relate to the "conditions of his prison life" and may be raised by way of a civil rights action. *Id.* at 541. Thus, the petitioner's claims relating to the frequency of segregation review hearings and the number of telephone calls he is permitted to make will be dismissed from this habeas corpus action.

The respondent further argues that the petitioner's due process claims should be denied as he was afforded all required due process protections throughout the disciplinary process. (Doc. No. 9, pp. 10–13). With respect to the petitioner's claim of a denial of due process at his DHO hearing, the Supreme Court has stated that "[p]rison disciplinary proceedings are not part of

---

**2.** An interesting point not mentioned in this case, is whether a magistrate judge has authority to preside over a § 2255 case, involving a misdemeanor conviction in federal court, previously handled by, or tried before, a U.S. Magistrate Judge.

a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Morrissey v. Brewer*, 408 U.S. 471, 488, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Subsequently, the Supreme Court ruled that the following procedures must be followed in an institution disciplinary hearing: (1) the inmate must receive no less than twenty-four hours advance written notice of the claimed violations; (2) the inmate must receive a written statement of the fact finder as to the evidence relied upon and the reasons for the disciplinary action taken; (3) the inmate must be allowed to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; (4) the inmate must be allowed to seek the aid of a fellow inmate or staff member; and (5) the disciplinary hearings must be impartial. *Wolff v. McDonnell*, 418 U.S. 539, 564–70, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). According to the Court, however, confrontation and cross-examination are not constitutional requirements in a disciplinary hearing. *Id.* at 567, 94 S.Ct. 2963.

In accord with *Wolff*, the Code of Federal Regulations, in pertinent part, requires the DHO to proceed as follows:

(a) The Warden shall give an inmate advance written notice of the charge(s) against the inmate no less than 24 hours before the inmate's appearance before the DHO . . .

(b) The Warden shall provide an inmate the service of a full time staff member to represent the inmate at the hearing before the DHO should the inmate so desire . . .

(c) The inmate is entitled to make a statement and to present documentary evidence in the inmate's own behalf. An inmate has the right to submit names of requested witnesses and have them called to testify and to present documents in the inmate's behalf, provided the calling of witnesses or the disclosure of documentary evidence does not jeopardize or threaten institutional or an individual's security . . .

(d) An inmate has the right to be present throughout the DHO hearing . . .

(e) The DHO shall give the inmate a written copy of the decision and disposition, ordinarily within ten days of the DHO's decision . . ., (including the) specific evidence relied on by the DHO and . . . a brief statement of the reasons for the sanctions imposed.

*See* 28 CFR § 541.17.

■ In this case, the record reflects that the petitioner received all of these protections. Specifically, he received: (1) Advance written notice of the charge on November 9, 2001, more than twenty-four hours in advance of the DHO hearing on December 18, 2001, (Doc. No. 10, p. 5); (2) Petitioner chose a staff representative, and his representative was present at the DHO hearing, (Doc. No. 10, pp. 7, 9); (3) Petitioner was permitted to call a witness and make a statement in his own behalf, (Doc. No. 10, pp. 10–11); and, (4) Petitioner received a copy of the DHO's report which included a statement of the evidence relied upon and the reasons for the disciplinary action taken against him (Doc. No. 10, p. 12). As such, the requirements of *Wolff* and the Code of Federal Regulations were satisfied with respect to the petitioner's disciplinary proceedings.

The petitioner also complains that the delay of eight months from the preparation of the incident report, until its service on November 9, 2001, violates his due process rights. The Code of Federal Regulations provides that staff will "ordinarily" provide the inmate with a copy of the incident report within twenty-four hours of writing

it. This provision, however, is not mandatory. *See* 28 CFR § 541.11.

In some situations, such as the case at hand, delay is warranted. 28 CFR § 541.14 states in pertinent part:

(b) Investigation. Staff shall conduct the investigation promptly unless circumstances beyond the control of the investigator intervene. (1) When it appears likely that the incident may be the subject of criminal prosecution, the investigating officer *shall* suspend the investigation, and staff may not question the inmate until the Federal Bureau of Investigation or other investigative agency interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur. (Emphasis added).

Here, the matter was not referred back to the institution from the Federal Bureau of Investigation until November 8, 2001. (Doc. No. 10, p. 6). As noted above, the institution was *required* to suspend their investigation during the pendency of the FBI's investigation. In compliance with the Code of Federal Regulations, it appears that the agency did just that.

Moreover, within twenty-four hours of the matter being referred back to the institution on November 8, 2001, the petitioner was provided with a copy of the incident report. (Doc. No. 10, p. 5). Shortly thereafter, on December 4, 2001, the petitioner was supplied with a copy of the reasons for that delay. (Doc. No. 10, p. 6). Finally, the petitioner was in possession of the incident report "no less than" twenty-four hours prior to the hearing, as required by *Wolff* and 28 CFR § 541.17(a). Based upon the above, the petitioner's due process rights were protected and his claims to the contrary will be denied.

Finally, the respondent argues that the habeas corpus petition should be dismissed as the DHO met the evidentiary standard required to find that the petitioner committed the prohibited act. (Doc. No. 9, pp. 13–16). In evaluating the petitioner's challenges to the sufficiency of the evidence, the Supreme Court has held that the standard of review is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill,* 472 U.S. 445, 455–6, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). *See also Griffin v. Spratt,* 969 F.2d 16, 19 (3d Cir.1992); *Elkin v. Fauver,* 969 F.2d 48 (3d Cir.), *cert. denied,* 506 U.S. 977, 113 S.Ct. 473, 121 L.Ed.2d 379 (1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill,* 472 U.S. at 457, 105 S.Ct. 2768.

In this case, the DHO relied upon the written statement of the reporting officer, which indicated among other things, that a cellular telephone was found during a search of a barn on the camp property. The telephone numbers called from the cellular telephone were cross referenced with Allenwood's inmate approved telephone numbers. One of the numbers that was called from the cellular telephone was on the petitioner's approved calling list. That number was not on any other inmate's calling list.

The DHO further relied upon prior statements made by the petitioner's own inmate witness during the investigation, that the witness, petitioner and two others had used the cellular telephone. This statement was corroborated by information provided to the investigating officer by another inmate, who also admitted to using the cellular phone and identified the petitioner and one other inmate as using the cellphone. (Doc. No. 10, p. 11). The

DHO also considered that petitioner's inmate witness retracted his statement at the hearing and testified that the investigating officer was mistaken when he indicated that he had previously stated that the petitioner had used the phone. The DHO found that the witness' hearing testimony, recanting his prior statement, was not credible in light of the other evidence of record. (*Id.*).

■ In light of the above, the court finds that there was "some evidence" to support the DHO's decision. In doing so, the court notes that, "Ascertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. *Hill*, 472 U.S. at 455–56, 105 S.Ct. 2768. (internal citations omitted). Thus, the petition will be denied with respect to the petitioner's claim that there was insufficient evidence to support the DHO's hearing decision.

As a final matter, the petitioner has pending before this court a motion to expedite consideration of his habeas corpus petition. (Doc. No. 4). In light of the instant memorandum and order disposing of the petition, that motion will be dismissed as moot.

## III. CONCLUSION

Based upon the foregoing, **IT IS HEREBY ORDERED THAT**:

(1) the petition for a writ of habeas corpus, (Doc. No. 1), is **DISMISSED** to the extent that the petitioner raises claims relating to the frequency of segregation review hearings and the number of telephone calls he is permitted to make, as these claim sound in civil rights and are not appropriately addressed by way of a petition for writ of habeas corpus;

(2) the petition for writ of habeas corpus, (Doc. No. 1), is **DENIED** in all other respects; and

(3) the petitioner's motion to expedite consideration of his petition for a writ of habeas corpus, (Doc. No. 4), is **DISMISSED** as moot.