**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward R. DRURY, Defendant-Appellant.**

**No. 82–3054.**

United States Court of Appeals,
Fifth Circuit.

Sept. 15, 1982.

As Modified on Denial of Rehearing
and Rehearing En Banc
Jan. 19, 1983.

Michael S. Fawer, Ronda C. Lustman, Clark A. Richard, New Orleans, La., for defendant-appellant.

John Patrick Deveney, Harry W. McSherry, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before CLARK, Chief Judge, GEE and GARZA, Circuit Judges.

PER CURIAM:

This is an appeal of mail fraud convictions stemming from a kickback scheme between appellant Drury, a Louisiana attorney representing plaintiffs in personal injury actions, and one Macaluso, a New Orleans physician to whom Drury referred most of his clients. The financial arrangements between the two, like most of the facts in this case, are undisputed.

It was Drury's custom to sign contracts with his clients in which he agreed to accept 40% of any settlement of the claim as his fee. Macaluso submitted his medical bills to Drury for payment. On settling with the insurance company, Drury would deduct his 40% fee and 100% of the face amount of the doctor's bill, forwarding the balance to the client. Pursuant to an agreement with Macaluso, however, Drury then remitted to the doctor only 85% of the doctor's medical bill, pocketing the remaining 15% himself.

Drury never disclosed to any client that he was skimming Macaluso's fees. Macaluso was the only physician with whom Drury had this arrangement; and, after 1974 or 1975 when a uniform 15% was always taken by Drury off the doctor's collections, two-thirds of Drury's referrals were to Macaluso.

Drury was indicted by a grand jury on 21 counts of mail fraud and one count of conspiracy to commit mail fraud. After a two-day bench trial, the court found Drury not guilty of conspiracy but guilty of the 21 counts of mail fraud. He was sentenced to five years in prison (all but fours months suspended, with three years probation) and fined $1,000 on each count.

*Sufficiency of the evidence*

As we stated in *United States v. Yanes*, 628 F.2d 294, 295 (5th Cir. 1980), we must

examine the evidence in the light most favorable to the government, making reasonable inferences and credibility choices in favor of the verdict of the trier of fact .... The verdict must stand if the trial judge is justified in finding the evidence inconsistent with any reasonable hypothesis of the defendant's innocence .... The test is the same whether the evidence is direct or circumstantial.

(citations omitted).

Drury was charged in counts 2–22 with operating a scheme "to cause insurance carriers to pay inflated settlements based on false medical statements, as well as to cause the clients of Mr. Drury to pay expenses in excess of that which were incurred." The district court in effect bifurcated each count, as if Drury had been charged with two schemes to defraud—one directed against the particular insurance company and one against his client. The court first properly set out the two-part proof for a mail fraud conviction: existence of a scheme to defraud and use of the mails in executing the scheme. The court then noted that the second element was essentially undisputed and pointed out that the first is demonstrated by a scheme that deprives the victim of valuable and tangible rights or opportunities, as in, for example, *United States v. Goss*, 650 F.2d 1336 (5th Cir. 1981)

(proof that intended victim actually suffered a loss is unnecessary; proof of potential loss suffices). The district court held that because the referral fee arrangement "did not deprive the insurance companies of any valuable tangible or intangible rights," Drury was not guilty of any violation "with respect to the insurance companies." The court reasoned that:

Dr. Macaluso charged the defendant's clients the same that he would have charged them if they had retained his services on their own initiative, and he treated these patients at the same level of care that he provided his other patients. None of the medical reports were false in the sense that they described treatments that did not occur or injuries that the patient had not, in fact, suffered. Whatever the nature of the arrangement between the doctor and Drury, the client was out-of-pocket to the extent of the doctor's bill. That the doctor chose to pay a portion of his fee to Drury does not lessen in any way the insurance company's obligation to make the client whole.

The only loss the insurance company suffered as a result of the 15% referral fee arrangement was the opportunity to conduct an independent probe of the arrangement. Drury owed no financial duty to the insurance companies. His relationship was that of an adversary.

As we have noted, the court also acquitted Drury of count one—conspiracy with Macaluso and an unnamed third person to defraud insurance companies and Drury's clients—because

no proof was ever introduced that Dr. Macaluso or the unnamed third person knew whether the 15% went completely into Drury's pocket or was shared, in whole or in part, with the client. The government also failed to introduce any evidence as to whether Dr. Macaluso or the unnamed third person knew anything about what Drury did or did not tell his clients.

■ With regard to the scheme to defraud Drury's clients, however, the court noted that under general Louisiana law and under the Louisiana Code of Professional Responsibility Rule 5–107 (duty to disclose

compensation from a third party) he owed a fiduciary duty to his clients and held that Drury had breached this duty by failing to reveal his 15% fee arrangement, in the process depriving his clients of "the opportunity to negotiate with Drury on fair terms regarding the conditions and fee arrangements of their employment with him." The court noted that the opportunity to bargain with full knowledge of all material information is a protected interest, citing *United States v. George*, 477 F.2d 508 (7th Cir.), *cert. denied*, 414 U.S. 827, 94 S.Ct. 155, 38 L.Ed.2d 61 (1973). The court further stated that

> Drury allowed his financial interests in Dr. Macaluso to affect the professional services that he rendered to his clients. The nondisclosure of the existence of the arrangement and the consequent breaches of Drury's fiduciary duty were not made innocently but with the specific intent to defraud the clients of their rights arising out of the relationship between themselves and Drury. Thus I conclude that Drury was engaged in a scheme to defraud for purposes of [18 U.S.C.] § 1341.

Appellant argues that these holdings by the court are impermissibly inconsistent, emphasizing that Drury's conviction was predicated upon a single set of facts: his nondisclosure to clients of his financial arrangement with Macaluso. According to Drury, his nondisclosures were impermissibly elevated from breaches of the Louisiana Code of Professional Responsibility to the sole evidentiary basis for a finding by the court of that specific intent to defraud requisite to a criminal conviction of mail fraud.

The district court was aware, however, that

> mere breach of a fiduciary duty does not by itself constitute a scheme to defraud in violation of the mail fraud statute . . . . A breach of a fiduciary duty only becomes a violation of § 1341, when it is coupled with concealment or misrepresentations of material facts in a plan to deceive.

Our review of the record reveals evidence suggestive of just such concealment, such as the fact that Drury employed a two-check policy in his fee arrangement and abandoned the 15% arrangement once Macaluso retained a third-party attorney to make his collections, as well as evidence that the only reason Drury referred his patients to Macaluso was the existence of the fee arrangement, Macaluso being both dilatory and a poor keeper of records. Appellant argues that his 15% commission was an administrative fee he charged because Macaluso was, by his own admission, a terrible record keeper. The government, however, takes a different view of Macaluso's carelessness. Citing testimony that Macaluso's delays in finishing patients' medical records would delay his patients' settlements, sometimes by as much as six months, the government argues with considerable force that Drury, as a diligent lawyer, had every incentive to find a more expeditious doctor. Seen in the light most favorable to the government, this evidence permitted the court's inference that Drury allowed his financial interest to affect the professional services he rendered his clients, concealed his kickback arrangement with Macaluso, and consequently and surreptitiously pocketed a larger fee than that he had agreed on with the client.

*Variance between charge and proof*

Drury argues that since the government failed to establish or the court to hold that Macaluso's bills were inflated, a critical element of the charges stated in counts 2–22 was not met by the government's proof. Having found Drury innocent of fraud as to the insurance companies, the court was, in appellant's view, bound to find him innocent of fraud as to his clients as well.

The problem with this contention is that the court's statement that Macaluso charged all his patients equally is *not* the equivalent of a finding that his bills were not inflated. Indeed, in light of Macaluso's own past convictions for mail fraud involving billing for substandard or nonexistent medical services, the court might equally have inferred that Macaluso merely cheated everyone equally—regardless of whether he had a 15% arrangement with the referring lawyer.

■ More serious, however, is Drury's suggestion that once the court bifurcated Drury's fraud—treating his acts with reference to the insurance companies separately from those toward his clients—the court created an indictment in which each substantive count impermissibly charged two separate crimes, leaving defense counsel somehow unprepared to defend against the court's ultimate theory of fiduciary fraud based on the Louisiana Code of Professional Responsibility and therefore prejudiced. Technical pleading duplicity is, however, not always prejudicial. The prohibition against duplicity

> protects a defendant's right under the sixth amendment and Rule 7(c) to notice of the "nature and cause of the accusation" against him so that he may prepare his defense. It also insures that if defendant is convicted, the offense upon which he is convicted will clearly appear from the verdict, so that appropriate punishment may be imposed. Finally, duplicity is prohibited because confusion as to the basis of the verdict may subject defendant to double jeopardy in the event of a subsequent prosecution.

8 J. Moore, *Moore's Federal Practice* ¶ 8.03[1] (1981) (footnotes omitted). Here appellant's brief admits that "appellant did anticipate that the prosecution might attempt to prove a violation of a provision of the Code of Professional Responsibility ...." Given that the court's fiduciary theory for the conviction was grounded only in part on Rule 5–107, we find it hard to believe that counts 2–22 did not give the defense sufficient notice of the nature of the charges against him. We therefore conclude that even if the indictment was technically duplicitous, it was not prejudicially so. *See, e.g., United States v. Bush,* 522 F.2d 641, 649 (7th Cir. 1975). Drury's other assertions of improper variance do not merit discussion; none is significant.

His convictions were not erroneously arrived at.[1] They are

AFFIRMED.

---

1. At oral argument, the possible applicability to Drury's appeal of *Parr v. United States,* 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), was suggested. There the Court held that mail fraud convictions could not be predicated on mailings of school district tax statements, checks and receipts, even when some of those doing the mailing meant to steal some of the resulting revenues, where "the Board was both legally *authorized* and *compelled* to cause the mailing ...." *Id.* at 385, 80 S.Ct. at 1180 (emphasis added). Responses by the parties to the suggestion were invited.

"Appellant has responded to our invitation, suggesting that *Parr* does indeed apply. We have carefully considered his contention and assuming that the Court would hold today as it did in *Parr*—a case where it remarked that "the factual situation is unique" (*id.* at 391, 80 S.Ct. at 1183)—we conclude that the circumstance that the mailings there were mandated by state law, one on which the Court's opinion lays great stress, suffices to distinguish it from that at bar, where they were a matter of Drury's choice.