**UNITED STATES of America**

v.

**Jesus Palomarez SANCHEZ A/K/A Jesus Rodriguez–Santos**

**No. CR. B–02–1551–M.**

United States District Court, S.D. Texas, Brownsville Division.

April 16, 2003.

Ms. Lynn Marie Kirkpatrick, Office of United States Attorney, Brownsville, for Petitioner.

Mr. Noe Robles, Attorney at Law, Brownsville, for Respondent.

Mr. J.W. Dyer, Dyer & Associates, McAllen, for Respondent.

### *MEMORANDUM DECISION*

HANEN, District Judge.

Pending is Defendant's appeal to the District Court from a misdemeanor conviction adjudged by a Magistrate Judge. For the reasons set forth below, Defendant's conviction is **AFFIRMED.**

## I. BACKGROUND

The Defendant was charged with violating an immigration law that prohibits aliens from entering "the United States at any time or place other than as designated by immigration officers." 8 U.S.C. § 1325(a)(1). The criminal complaint states that the Defendant "was apprehended near Los Indios, Texas on October 7, 2002" and "admitted wading the Rio Grande River near Los Indios, Texas ... thus avoiding inspection" on that same date. *Docket No. 1.* On the following day, the Defendant was appointed counsel, entered a plea of guilty, waived his right to a presentence investigation, and was sentenced to sixty days confinement and assessed $10.00. *Docket Nos. 4–6.* All these proceedings were presided over by United States Magistrate Judge John Wm. Black.

On October 22, 2002, the Defendant, via new counsel, motioned the Magistrate Judge to either set aside the sentence pursuant to 28 U.S.C. § 2255, or, alternatively, grant a motion for new trial. *Docket No. 7.* In this motion, the Defendant asserted a different legal identity from the name under which he was originally convicted and claimed to enjoy the status of permanent resident alien. *Id.* In support of this motion, Defendant attached a copy of a "Permanent Resident Card." *Id.* In addition, the Defendant asserted that "he did not in fact wade the Rio Grande [R]iver to avoid inspection." *Id.* His prior plea to the contrary was alleged to be the result of mistake and fear of more serious charges if he failed to enter said plea. *Id.*

In response to Defendant's motion, the Magistrate Judge set the matter for hearing. *Docket No. 8.* A hearing was held on October 30, 2002. *Docket No. 9.* At this hearing, three exhibits were admitted into evidence: Defendant's purported Permanent Resident Card and two INS forms documenting his post-arrest interview; oral testimony was also given by the Defendant. *Docket Nos. 9–10.* Although the Magistrate Judge reserved judgment, he requested that the government "seek felony charges due to false statements made by Defendant." [1] *Docket No. 9.*

On November 4, 2002, the Magistrate Judge issued his ruling, in which he construed Defendant's motion as one arising under § 2255 and denied it. *Docket No.*

---

1. On the stand, the Defendant stated that he had lied to both immigration officials after his arrest and the Magistrate Judge while entering his plea of guilty. *Docket No. 11.* The tapes of the hearing on Defendant's Motion for New Trial reflect that the Defendant lied about his name, date of birth, and citizenship, among other things. Moreover, the Defendant testified that his prior dishonesty regarding his citizenship and/or immigration status was not the result of "fear of a more serious

felony charge at the time of his arrest, which was in direct contradiction of his statement in the motion." *Id.* Pursuant to the Magistrate Judge's request, the government issued an indictment for making false statements to federal agents on January 14, 2003. *See United States v. Jesus Palomares–Sanchez,* Crim. No. B–03–19 (S.D.Tex.2003). This felony case remains pending on the Court's criminal docket.

*11.* In doing so, the Magistrate Judge relied on case law from other circuits to the effect that 8 U.S.C. § 1325 applies to all aliens, including permanent resident aliens. *Id.* Therefore, the Magistrate Judge concluded that Defendant's status as a permanent resident (as opposed to an illegal alien) was irrelevant to his conviction. *Id.* In addition, the Magistrate Judge made a determination that the Defendant's first story (*i.e.,* that Defendant entered illegally) was the more credible one in light of the fact that the Defendant, who had "repeatedly lied," had not had time for reflection to concoct a lie when first arrested. *Id.* As there was no other testimony or evidence, the Magistrate Judge denied Defendant's motion. *Id.*

Subsequently, the Defendant filed two documents with the Court. The first, styled as "Objection to Magistrate's Report and Recommendation," was directed to the District Court. *Docket No. 12.* The second document, filed the same day, was a notice of appeal to the Fifth Circuit Court of Appeals. *Docket No. 13.*

## II. PROCEDURAL POSTURE AND JURISDICTION

As it now stands, Defendant has been adjudicated guilty of an offense under 8 U.S.C. § 1325(a)(1). Defendant has sought reconsideration of that conviction in two ways: (1) by objecting to the Magistrate Judge's November 4, 2002 denial of his § 2255 motion (or, alternatively, motion for new trial), which the Defendant characterizes as a report and recommendation to the District Court; and (2) by appealing the judgment of conviction and sentence as well as the Magistrate Judge's denial of the § 2255 motion (or, alternatively, motion for new trial) to the Fifth Circuit Court of Appeals. *See Docket Nos. 12–13.*

Initially, the Court notes that the two avenues of relief that the Defendant has pursued are, in part, mutually exclusive. The first avenue—objections to a purported report and recommendation—presupposes that no final judgment has ever been entered, at least with reference to the requested post-conviction relief. Whereas the second avenue, insofar as the notice of appeal also purports to appeal the Magistrate Judge's November 4, 2002 Memorandum and Order, assumes that said order is final and appealable. Neither filing is accurately characterized or effective in the manner intended by the Defendant.

### A. Objections to the Magistrate Judge's "Report and Recommendation"

▮▮▮ In this case, there is nothing that may be accurately characterized as a magisterial report and recommendation. The Defendant was convicted of violating 8 U.S.C. § 1325(a)(1). *Docket No. 6.* This crime is punishable by imprisonment of up to six months and a fine, or both, for a first offense. 8 U.S.C. § 1325(a). This is it a Class B Misdemeanor. *See* 18 U.S.C. § 3559(a)(7). This classification, in turn, places it within the definition of "petty offense." 18 U.S.C. § 19. As such, United States Magistrate Judges are authorized to conduct trials and enter sentences regarding 8 U.S.C. § 1325 under their own authority and jurisdiction, without the consent of the parties. 28 U.S.C. § 636(a)(3)-(4); 18 U.S.C. § 3401(a)-(b). Under the foregoing provisions, any conviction entered is not a report and recommendation to the District Court; it is a binding adjudication of guilt. Therefore, a Defendant may not file objections to such a misdemeanor conviction as if it were a nonbinding recommendation made pursuant to 28 U.S.C. § 636(b).[2]

Given the Magistrate Judge's construal of Defendant's post-trial motion as one

**2.** For a similar analysis of Magistrate Judges' jurisdiction to hear petty offenses, see *United*

brought pursuant to § 2255, the Defendant, perhaps, filed said objections in light of the fact that Magistrate Judges are statutorily allowed to entertain "applications for posttrial [sic] relief" solely when such matters are referred to them by the district court. 28 U.S.C. § 636(b)(1)(B). Regarding post-trial motions, Magistrate Judges are confined to the issuance of "proposed findings of fact and recommendations for the disposition" of the matter by a district judge. *Id.* However, no such referral of the post-trial motion was ever made in this case, and the Defendant filed and argued his post-trial motion before the Magistrate Judge, notwithstanding the aforementioned statutory provision.

▆▆▆ To the extent that the foregoing recitation accurately reflects the Defendant's thinking, his thinking is mistaken. Section 2255 proceedings are generally considered civil in nature and are so construed in the particular context of the Magistrates' Act. *United States v. Johnston,* 258 F.3d 361, 364–66 (5th Cir.2001). Although the Magistrates' Act allows all civil proceedings to be tried before a Magistrate Judge if the parties consent, the Fifth Circuit has ruled that such consensual delegation of § 2255 proceedings to

Magistrate Judges contravenes Article III of the Constitution. *Johnston,* 258 F.3d at 366–72. Notwithstanding the fact that many of the structural constitutional concerns outlined by the *Johnston* court do not seem to be implicated in a situation such as the instant case, in which the Magistrate Judge was reconsidering an adjudication of guilt that he himself had presided over rather than a district court's judgment, neither Judge DeMoss's opinion for the court nor Judge Higginbotham's concurrence admits of any exception. *See id.* at 372 ("[W]e conclude that the consensual delegation of § 2255 motions to magistrate judges violates Article III of the Constitution."); *id.* at 374 (Higginbotham, J., specially concurring) ("I join the holding that petitions for relief from federal criminal convictions under 28 U.S.C. § 2255 may not be referred to a magistrate judge for final disposition."). Moreover, one of the *Johnston* court's principal concerns remains just as significant in the present context: "if a magistrate judge were allowed to enter a final order in a consensual § 2255 proceeding, that order would not be reviewable by the district court."[3] *Id.* at 371. Accordingly, the Magistrate Judge did not have any author-

---

*States v. Arraiza Navas,* 206 F.Supp.2d 274, 276–78 (D.Puerto Rico 2002).

**3.** Appeal from final judgments in § 2255 actions lies in the court of appeals. 28 U.S.C. § 2255. As the *Johnston* court explains, any potential recourse to the court of appeals will not suffice, because "the constitutionality of increased magistrate judge participation in the federal court system" has always been premised on "the ability of Article III *district courts* to control and review a magistrate judge's decision." *Johnston,* 258 F.3d at 370–71 (emphasis added). As such, "[c]onsensual delegation of § 2255 proceedings do not evince sufficient reviewability and control for purposes of Article III." *Id.* at 371.

The Court acknowledges that its ruling might appear to be in tension with § 2255's express language. *See* 8 U.S.C. § 2255 (stating that "[a] prisoner . . . may move the court

which imposed the sentence to vacate, set aside or correct the sentence"). However, "Section 2241 . . . provides the general jurisdictional basis for federal courts to consider challenges to both state and federal judgments." *Story v. Collins,* 920 F.2d 1247, 1250 (5th Cir.1991). Section 2241's general jurisdictional provision vests habeas jurisdiction solely in Article III courts. *See* 28 U.S.C. § 2241(a) (specifying that writs of habeas corpus may be obtained from Supreme Court justices, circuit judges, and district judges). Section 2241 makes no mention of United States Magistrate Judges.

The rules of appellate procedure also support the Court's view of § 2255 motions. *See* FED. R. APP. P. 22(a) ("An application for a writ of habeas corpus must be made to the appropriate district court."). But more importantly, an entire set of rules promulgated

ity to consider Defendant's motion as one arising under § 2255.

However, the Defendant also alternatively characterized his § 2255 motion as a "Motion For New Trial." Appellate courts routinely recharacterize motions according to the actual relief sought, notwithstanding the label affixed thereto. *See. e.g., United States v. Santora*, 711 F.2d 41, 42 n. 1 (5th Cir.1983) ("As a general proposition, review of the merits of a federal prisoner's claim is not circumscribed by the label attached. Because the essence of the pleading controls, titling and erroneous citation of authority has been ignored.") (internal citations omitted). Motions that have been misidentified or mislabeled by lower courts rather than parties are also subject to recharacterization on appeal. *Adams v. United States*, 155 F.3d 582, 584 n. 1 (2d Cir.1998) (per curiam).[4] In this case, characterization of the Defendant's motion as one for new trial based on newly discovered evidence pursuant to FED. R. CRIM. P. 33 is considerably more accurate than characterization as a § 2255 motion. *See Docket No. 7* (grounding motion on Defendant's hitherto undisclosed identity

and immigration status and a claim that the Defendant did not illegally enter the country but pleaded otherwise because he failed to appreciate the nature of the charges against him); *United States v. Medina*, 118 F.3d 371, 373 (5th Cir.1997) (contrasting nature and purpose of Rule 33 and § 2255 and stating that proceedings initiated under the latter "must be premised on a fundamental breakdown in the procedures designed to assure a fair and reliable outcome"). As a practical matter, a motion for new trial would have had to have been premised on newly discovered evidence, because said motion was filed more than seven days after the entry of judgment. *See* FED. R. CRIM. P. 33 (requiring motions for new trial premised on any ground other than newly discovered evidence to be filed "within 7 days after the verdict or finding of guilty").

Unlike a § 2255 motion, the Magistrate Judge certainly could have entertained a motion for new trial pursuant to FED. R. CRIM. P. 33. *See* FED. R. CRIM. P. 58(f) ("Rule 33 applies to a motion for new trial.").[5] Although the Magistrate Judge's denial of a Rule 33 motion would still not

---

specifically for the benefit of district courts in handling § 2255 motions indicates that those motions are meant to be disposed of exclusively in Article III courts. *See generally* RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICTS COURTS. In particular, Rule 10 authorizes Magistrate Judges to conduct habeas proceedings in conformity with 28 U.S.C. § 636. The Advisory Committee Notes to Rule 10, promulgated when the Rules were adopted in 1976, refer the reader to the corresponding note for Rule 10 of the rules governing § 2254 cases. That note elaborates that, at the time of the Rules' adoption, Magistrate Judges were not authorized by the Magistrates' Act to make final decisions in habeas proceedings and that the authority of Magistrate Judges in habeas proceedings is constrained by the Constitution. This latter observation would appear to bring the matter full circle, to the *Johnston* decision.

4. The *Adams* court observed:

We do not suggest it would be appropriate for a later court to deem the earlier motion as one filed under § 2255 solely because the earlier court so labelled it. We ruled in *Chambers v. United States*, 106 F.3d 472, 474–75 (2d Cir.1997) that whether a motion was made under § 2255 should be determined by reference to the relief sought in the motion rather than what label the movant used. We think this would be so for labels applied by the court as well, at least where an application that is *not* a § 2255 motion is erroneously deemed to be one. *Adams*, 155 F.3d at 584 n. 1 (emphasis in original).

5. FED. R. CRIM. P. 58 governs proceedings conducted by Magistrate Judges "in petty offense and other misdemeanor cases" and appeals "to a district judge in a case tried by a magistrate judge." FED. R. CRIM. P. 58(a)(1).

constitute a report and recommendation, it would be appealable to the District Court in the same fashion that such a ruling entered by a district court would be appealable to the court of appeals. *See United States v. Jaramillo,* 42 F.3d 920, 924–25 (5th Cir.1995) (reviewing denial of motion for new trial on the basis of newly discovered evidence for abuse of discretion), *cert. denied,* 514 U.S. 1134, 115 S.Ct. 2014, 131 L.Ed.2d 1013 (1995). Accordingly, on appeal, this Court construes Defendant's October 22, 2002 motion as one for new trial based on newly discovered evidence pursuant to FED. R. CRIM. P. 33 and reviews it under the applicable appellate standard of review.

## B. Notice of Appeal

■ Preliminarily, this Court must determine whether it has jurisdiction to entertain this case on appeal, as the Defendant has filed a notice of appeal to the Fifth Circuit Court of Appeals. *Docket No. 13.* Said notice of appeal expressly includes both the Magistrate Judge's judgement of conviction and sentence and his denial of Defendant's motion for new trial. *Id.* Typically, notice of appeal to an appellate court in a criminal case deprives a district court of jurisdiction. *See United States v. Mulderig,* 120 F.3d 534, 539 (5th Cir.1997) (noting that once the defendant "filed his notice of appeal, the district court lost jurisdiction over this case"), *cert. denied,* 523 U.S. 1071, 118 S.Ct. 1510, 140 L.Ed.2d 664 (1998). However, this general rule is inapplicable in this particular case.

■ A party may appeal to the district court from a misdemeanor conviction adjudged by a Magistrate Judge. *See* 18 U.S.C. § 3402 ("In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed."); *see also* FED. R. CRIM. P. 58(g)(2) ("A defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 10 days of its entry."). Indeed, a defendant may only pursue appeal of a misdemeanor conviction entered by a Magistrate Judge to the district court. *See United States v. Jones,* 117 F.3d 644, 645 (2d Cir.1997) (per curiam) (dismissing direct appeal to Second Circuit Court of Appeals from conviction entered by a Magistrate Judge for want of jurisdiction because the defendant did not first appeal to the district court pursuant to § 3402); *United States v. Smith,* 992 F.2d 98, 99–100 (7th Cir.1993) (same); *United States v. Soolook,* 987 F.2d 574, 575 (9th Cir.1993) (same); *Midway Mfg. Co. v. Kruckenberg,* 720 F.2d 653, 654 (11th Cir.1983) (per curiam) (same). Therefore, notwithstanding the Defendant's purported notice of appeal to the Fifth Circuit, the District Court for the Southern District of Texas—and only the District Court—presently has jurisdiction of any appeal from the proceedings conducted before the Magistrate Judge.[6]

---

**6.** The Court has found no cases from the Fifth Circuit Court of Appeals that mirror this jurisdictional analysis. There are, however, cases that endorse this result by implication. *See, e.g., United States v. Garrett,* 984 F.2d 1402, 1404–05 (5th Cir.1993) (describing appellate process in appeal from a Magistrate Judge's adjudication of conviction as entailing direct appeal to the district court via 18 U.S.C. § 3402 and noting the availability of subsequent appeal to the Fifth Circuit via 28 U.S.C. § 1291); *United States v. Sanders,* 793 F.2d 107, 108 (5th Cir.1986) (describing same procedure without reference to the relevant statutes).

Normally, in deference to the appellate court, the District Court would wait for the Fifth Circuit to conduct the foregoing jurisdictional analysis and remand the case. However, consultation with the District Clerk's office reveals that the record has never been requested by the appellate court and that the file pertaining to this case remains in the

Nonetheless, Defendant's notice of appeal to the Fifth Circuit, provided that it was timely, was otherwise sufficient to preserve his right of appeal to this Court. *See Jones,* 117 F.3d at 645 (holding that a defendant's timely notice of appeal to the Seventh Circuit Court of Appeals was "sufficient—notwithstanding the identification of the incorrect court—to vest jurisdiction in the district court as there is no other court in which the defendant might legally seek review"); *Smith,* 992 F.2d at 100 (same); *Soolook,* 987 F.2d at 575 (same). The Defendant may, of course, pursue an appeal from any final decision of the District Court in the Fifth Circuit Court of Appeals. *See* 28 U.S.C. § 1291 ("The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States ...."). In the event that the Defendant desires to appeal the District Court's affirmance of the Magistrate Judge's judgment, Defendant should timely file a notice of appeal to the Fifth Circuit as per Fed. R. App. P. 4 after this Court has entered its judgment.

### III. TIMELINESS OF APPEAL

In this appeal to the District Court, the Federal Rules of Criminal Procedure specify that "[a] defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 10 days of its entry." Fed. R. Crim. P. 58(g)(2). In construing Rule 4(b)—the analogous Appellate Rule that also establishes a ten-day period for filing a notice of appeal to the appellate courts in criminal cases—the Fifth Circuit has held that the timely filing requirement is either jurisdictional or a prerequisite to the exercise of jurisdiction. *Compare United States v. Rodriguez,* 278 F.3d 486, 489 (5th Cir.

2002) ("The filing of a notice of appeal within the 10–day period prescribed by this rule [Fed. R. App. P. 4(b)(1) ] is mandatory and jurisdictional."), *cert. denied,* 536 U.S. 913, 122 S.Ct. 2376, 153 L.Ed.2d 195 (2002), *with United States v. Winn,* 948 F.2d 145, 153 (5th Cir.1991) ("A timely notice of appeal is not jurisdictional; however, in this circuit it is a prerequisite to our exercise of jurisdiction."), *cert. denied,* 503 U.S. 976, 112 S.Ct. 1599, 118 L.Ed.2d 313 (1992). Whatever the case may be, Defendant's notice of appeal must have been timely filed in order to preserve his right to be heard in this Court.

Regarding timeliness, the Court must first determine whether the Federal Rules of Criminal Procedure or the Federal Rules of Appellate Procedure apply regarding the computation of time. Generally, the former rules are applied in district court proceedings. *See United States v. Clark,* 51 F.3d 42, 43 (5th Cir.1995) (stating that the former rules govern "motions and applications before the district court" and that the latter rules pertain to "notices of appeal"). However, Rule 58 of the Federal Rules of Criminal Procedure, which pertains to proceedings centered on petty offenses and misdemeanors, specifically provides that "[t]he Federal Rules of Appellate Procedure govern an appeal from a district judge's order *or a judgment of conviction or sentence.*" Fed. R. Crim. P. 58(g)(1) (emphasis added). The Advisory Committee's Note states that "subdivision (g)(1) was added to make clear that the Federal Rules of Appellate Procedure govern any appeal in a case tried by a district judge pursuant to this new rule." Fed. R. Crim. P. 58 advisory committee's note (1990 additions). This is consistent with the general appellate scheme of Rule 58, in

Brownsville Division. Therefore, in the interests of efficiency, the Court has addressed the

appeal in more direct fashion.

which the district court functions as a court of review rather than a trial court. *See* FED. R. CRIM. P. 58(g)(D) ("The defendant is not entitled to a trial de novo by a district judge. The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge.").

As stated, Rule 58 requires an appeal from the Magistrate Judge to be filed within ten days of entry of the "magistrate judge's judgment of conviction or sentence." FED. R. CRIM. P. 58(g)(2)(B). Rule 26 of the Rules of Appellate Procedure specifies that intermediate Saturdays, Sundays, and legal holidays are excluded from any time period "when the period is less than 11 days, unless stated in calendar days." FED. R. APP. P. 26(a)(2). Judgment of Defendant's conviction was entered on October 8, 2002. *Docket No. 6.* The Magistrate Judge's denial of Defendant's motion for new trial was entered on November 4, 2002. *Docket No. 11.* Defendant's notice of appeal was filed on November 18, 2002. *Docket No. 13.*

 Simple arithmetic reveals that Defendant's November 18, 2002 notice of appeal was filed well beyond the ten-day period with reference to his October 8, 2002 conviction and sentence, as any such motion usually would have had to have been filed no later than October 23, 2002.[7] However, certain post-trial motions toll the period for filing. Rule 4(b)(3)(A) provides that:

> If a defendant timely makes any of the following motions under the Federal Rules of Criminal Procedure, the notice

of appeal from a judgment of conviction must be filed within 10 days after the entry of the order disposing of the last such remaining motion, or within 10 days after the entry of the judgment of conviction, whichever period ends later. This provision applies to a timely motion: ... (ii) for a new trial under Rule 33, but if based on newly discovered evidence, only if the motion [for new trial] is made no later than 10 days after the entry of the judgment ....

FED. R. APP. P. 4(b)(3)(A). Accordingly, Defendant's notice of appeal need only have been filed within 10 days of the Magistrate Judge's order denying the Defendant a new trial,[8] which was entered on November 4, 2002. *See Docket No. 11.* Therefore, Defendant's November 18, 2002 notice of appeal, *Docket No. 13*, was timely with regard to Defendant's conviction and sentence, as it was due no later than November 19, 2002.[9] Defendant's notice of appeal was also timely with regard to his motion for new trial as the notice was plainly filed within the ten-day period subsequent to Magistrate Judge's November 4, 2002 denial of that motion. Therefore, the Court concludes that Defendant's notice of appeal was timely filed with reference to both Defendant's conviction and sentence and his motion for new trial.

## IV. DISMISSAL OF APPEAL IS INAPPROPRIATE

Subsequent to his conviction in this matter, the Defendant was indicted for making false statements to agents of the United States Border Patrol. *See United States v. Jesus Palomares–Sanchez*, Crim.

---

7. Monday, October 14, 2002, was Columbus Day, a legal holiday, which is not counted in establishing the ten-day period for timely appeal. FED. R. APP. P. 26(a)(2), (4).

8. *See supra* Part II.A. (construing Defendant's post-trial motion as one for new trial pursuant to Rule 33).

9. Monday, November 11, 2002, was Veterans' Day, a legal holiday, which is not counted in establishing the ten-day period for timely appeal. FED R. APP. P. 26(a)(2), (4).

No. B–03–19 (S.D.Tex.2003); *see also supra* note 1 and accompanying text. In the interim, the Defendant had served his sixty-day sentence in this case and was released. His present whereabouts are unknown and he is currently a wanted fugitive with an outstanding bench warrant for his arrest. An issue therefore exists as to whether his appeal should be dismissed under the Fugitive Disentitlement Doctrine. *See Molinaro v. New Jersey,* 396 U.S. 365, 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) (per curiam) (declining to adjudicate the appeal of a "fugitive from justice"); *United States v. DeValle,* 894 F.2d 133, 135 (5th Cir.1990) ("It is settled that where a defendant becomes a fugitive from justice during the pendency of her appeal, the appellate court has the authority to dismiss the appeal.").

■ While arguably applicable in this case, this Court is unaware of an instance in this Circuit in which the Fugitive Disentitlement Doctrine has been applied to an individual who had already served the entirety of the sentence at issue.[10] Likewise, although the Court is aware of the authority of *United States v. Shelton,* 508 F.2d 797, 798 (5th Cir.1975) (dismissing federal appeal because the defendant was a fugitive from state authorities on an unrelated state charge), *cert. denied,* 423 U.S. 828, 96 S.Ct. 45, 46 L.Ed.2d 44 (1975), the Court thinks that this case presents enough factual dissimilarities so that *Shelton* does not control this case. Based upon the fact that the factual background of this case does not readily lend itself to the imposition of the Fugitive Disentitlement Doctrine, or at least raises some doubt as to its application, this Court is compelled to address the merits of Defendant's appeal.

## V. ISSUES ON APPEAL AND THE APPELLATE RECORD

The Defendant has never filed an appellate brief discussing the issues raised on appeal akin to those required in traditional appeals pursuant to FED. R. APP. P. 28, 30–32 or any other document identifying the issues other than his purported "Objection to Magistrate's Report and Recommendation."[11] *Docket No. 12.* Accordingly, the Court has limited the scope of Defendant's appeal to the issues reasonably identified therein. In that document, the Defendant principally raises issues of factual sufficiency. To wit, the Defendant asserts that (1) "[t]here was no direct evidence of the defendant's having entered the country illegally with intent to avoid inspection," (2) "[t]here was no reliable direct evidence of the defendant's having entered the country illegally with intent to avoid inspection," (3) "[t]here was no reliable circumstantial evidence of the defendant's having entered the country illegally with intent to avoid inspection," (4) "[t]he trial court abused its discretion in failing to determine that there was a factual basis for the plea," (5) the Magistrate Judge "abused his discretion in not granting the motion for new trial," and (6) that the government's deportation of two illegal

---

**10.** The Defendant has not entirely complied with the terms of the judgment in the instant case, as he has not paid the assessment ordered by the Magistrate Judge. *Docket No. 6; see* 18 U.S.C. §§ 3013(a), (c) (mandatory $10.00 assessment for misdemeanors).

**11.** Criminal Local Rule 57.1, pertaining to Magistrate Judges, incorporates the Southern District's General Order No. 80–5 by reference. Unlike Article IV.E.2(d) of General Order No. 80–5, which governs appeals to the district court in civil cases heard by Magistrate Judges on consent of the parties and expressly requires appellate briefing, Article IV.D ("Appeal from Judgments in Misdemeanor Cases") does not have an appellate briefing requirement. Nonetheless, parties have some obligation to clarify the issues raised on appeal and the legal authority therefor.

aliens prejudiced the Defendant's case in various ways. *Id.* In examining these issues, Rule 58(g)(2)(C) specifies that the record in an appeal from a Magistrate Judge's adjudication of a misdemeanor "consists of the original papers and exhibits in the case; any transcript, tape, or other recording of the proceedings; and a certified copy of the docket entries." FED. R. CRIM. P. 58(g)(2)(C). The Court has reviewed these materials or their equivalent.[12]

## VI. STANDARD OF REVIEW

 Rule 58(g)(2)(D) states that "[t]he defendant is not entitled to a trial de novo by a district judge." FED. R. CRIM. P. 58(g)(2)(D). Instead, "[t]he scope of appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." *Id.* Generally speaking, the Fifth Circuit reviews questions of law de novo and factual findings for clear error. *Gandy Nursery, Inc. v. United States,* 318 F.3d 631, 636 (5th Cir. 2003). Individual legal and factual issues raised regarding the Defendant's conviction will be reviewed accordingly. However, regarding the Magistrate Judge's denial of Defendant's motion for new trial, the appropriate standard of review is abuse of discretion. *United States v. Jaramillo,* 42 F.3d 920, 924 (5th Cir.1995), *cert. denied,* 514 U.S. 1134, 115 S.Ct. 2014, 131 L.Ed.2d 1013 (1995).

## VII. DISCUSSION

### A. Intent to Avoid Inspection

At the outset, the Court must address a legal issue raised by Defendant's first three appellate issues.[13] In each of these issues, the Defendant questions the evidentiary basis for any determination that the Defendant had the "intent to avoid inspection." *Docket No. 12.* As intent is legally irrelevant to Defendant's conviction, it does not establish any basis for vacatur or a new trial.

 Defendant was charged and convicted pursuant to 8 U.S.C. § 1325(a)(1). *Docket Nos. 1, 6.* This statutory provision criminalizes entry or attempted entry into the United States by any alien "at any time or place other than as designated by immigration officers." 8 U.S.C. § 1325(a)(1). No particular motivation need be shown; said entry is prohibited even if the alien in question had no intention of avoiding inspection. Another provision of the same statute criminalizes alien avoidance of "examination or inspection by immigration officers." 8 U.S.C. § 1325(a)(2). But the Defendant was not convicted under that provision. And the use of the word "or" in the statute makes it unmistakably clear that subsections (a)(1) and (a)(2) are disjunctive. That is, the conduct described in subsections (a)(1) and (a)(2) are each criminal standing alone; an alien need not violate both subsection (a)(1) and subsection (a)(2) in order to have violated § 1325.

### B. The Definition of "Alien"

The first three issues raised on appeal by the Defendant also may be read indirectly to question whether the Defendant is subject to § 1325 at all. In each of these issues, Defendant asserts that there is no evidentiary basis to support that he "entered the country *illegally.*" *Docket*

---

**12.** In actuality, the Court has never been provided with a certified copy of the docket entries. However, via the Southern District's internal website, the Court has access to an accurate and up-to-date docket sheet. The Court has availed itself of this documentation in reviewing the Defendant's appeal. The original papers and exhibits and audiotapes of the proceedings below were available to the Court and were also reviewed.

**13.** For identification of these three issues, see *supra* Part V.

*No. 12* (emphasis added). When conjoined with his arguments before the Magistrate Judge, this might be interpreted, in part, as a reassertion that Defendant, as a permanent resident alien, is not subject to § 1325. As this assertion is contrary to the law, it does not establish any basis for vacatur or a new trial.

■ Section 1325 applies to "[a]ny alien." 8 U.S.C. § 1325. Notwithstanding this language, Defendant has argued that Section 1325 does not apply to permanent resident aliens. Defendant's argument is belied by Title 8's definition of "alien," which defines that term to mean "any person not a citizen or national of the United States." 8 U.S.C. 1101(a)(3). Defendant does not purport to be either a citizen or a national. Other subprovisions of the definitional provision of Title 8 also indicate that a permanent resident alien, is, as the very name indicates, an alien for purposes of the immigration statutes. *See* 8 U.S.C. §§ 1101(a)(15), (20) (defining one who has been "lawfully admitted for permanent residence" as an "immigrant," which in turn is defined as "every alien" except specified "nonimmigrant aliens"). Finally, the Magistrate Judge cited case law in which permanent resident aliens were held to be within the compass of § 1325 with no discussion. *See Docket No. 11* (citing *United States v. Figueroa–Corrales,* No. 87–1279, 845 F.2d 329, 1988 WL 35757 (9th Cir. Apr. 13, 1988) (unpublished opinion) and *Gunaydin v. United States Immigration and Naturalization Serv.,* 742 F.2d 776 (3d Cir.1984)). The Court is of the opinion that the clarity of the statute's definitional provisions and the straightforward application of § 1325 to permanent resident aliens in federal case law forecloses Defendant's contention that the statute does not apply to him on account of his immigration status.

## C. Factual Sufficiency and Rule 11(f)

Having dispensed with the two foregoing legal matters, the first three issues raised by Defendant on appeal assert that there is "no direct evidence," "no reliable direct evidence," and "no reliable circumstantial evidence" that the Defendant entered the country in violation of § 1325. *Docket No. 12.* Defendant asserts that no one saw him enter the country, that he was dry when apprehended (presumably in support of Defendant's present contention that he did not cross the Rio Grande), and that no one other than the Defendant testified during the entry of his plea and during the hearing on his motion for new trial. *Id.* The obvious difficulty with Defendant's position on appeal is that, at the time of his plea, Defendant admitted his guilt. In order to avoid the effect of his plea, Defendant, in his motion for new trial, asserted that he, in fact, did not enter the country illegally by wading across the Rio Grande. *Docket No. 7.* Defendant effectively reasserts this claim via his evidentiary objections and by now asserting that there was no "factual basis" for his prior plea to the contrary and that there was "no evidence to corroborate the defendant's plea of guilty." *Docket No. 12.*

■ "When reviewing the sufficiency of the evidence in a criminal case, this Court views the evidence, both circumstantial and direct, in the light most favorable to the government with all reasonable inferences to be made in support of the jury's verdict." *United States v. Rodriguez,* 278 F.3d 486, 490 (5th Cir.2002), *cert. denied,* 536 U.S. 913, 122 S.Ct. 2376, 153 L.Ed.2d 195 (2002). In a bench trial, the judge's factual determinations are subject to the same standard of review. *United States v. Drury,* 687 F.2d 63, 64 (5th Cir. 1982) (per curiam), *cert. denied,* 461 U.S. 943, 103 S.Ct. 2119, 77 L.Ed.2d 1300 (1983). Credibility choices are likewise ex-

amined " 'in favor of the verdict of the trier of fact.' " *Id.* (quoting *United States v. Yanes,* 628 F.2d 294, 295 (5th Cir.1980)).

▮ The only evidence in the record regarding Defendant's illegal entry or lack thereof is the Defendant's own contradictory statements. Of these statements, only Defendant's testimony at the hearing on the motion for new trial was under oath.[14] However, having determined that "the Defendant repeatedly lied to government officials as well as the court," the Magistrate Judge concluded that Defendant's credibility was questionable. *Docket No. 11.* In deciding which version of events to credit,

the Magistrate Judge opted to credit Defendant's initial plea, as it was made without time for reflection or calculation. *Id.* The Magistrate Judge was entitled to make this determination. *See Goodwin v. Johnson,* 224 F.3d 450, 457 (5th Cir.2000) (quoting *Tyler v. Beto,* 391 F.2d 993, 995 (5th Cir.1968), for the proposition that " '[c]redibility is for the trier of facts and [even] the uncontradicted testimony of a witness does not have to be accepted' "), *cert. denied,* 531 U.S. 1120, 121 S.Ct. 874, 148 L.Ed.2d 785 (2001). In view of the Defendant's contradictory statements and the self-serving nature of his rather dubious post-conviction testimony,[15] the Magis-

---

14. The fact that the Defendant's plea was not made under oath is inconsequential. At one time, the Fifth Circuit required that defendants be placed under oath during plea proceedings. *See generally Bryan v. United States,* 492 F.2d 775 (5th Cir.1974) (en banc). However, Rule 11 has since been amended several times. The commentary to the 1974 amendments merely states that "it may be desirable ... to place the defendant under oath." Fed. R. Crim. P. 11 advisory committee's note (1974 Amendment). The current version of Rule 11 leaves no doubt that placing a defendant under oath is discretionary. Fed. R. Crim. P. 11(b)(1) ("Before the court accepts a plea of guilty or nolo contendere, the defendant *may* be placed under oath, and the court must address the defendant personally in open court.") (emphasis added); *see also* Benchbook For U.S. District Judges § 2.01 n. 3 (4th ed. 2000) ("An oath is not required by Fed.R.Crim.P. 11 but is strongly recommended to avoid any subsequent contention in a proceeding under 28 U.S.C. § 2255 that defendant did not answer truthfully at the taking of the plea because he or she was not sworn."). Moreover, the rule articulated in *Bryan* was for the benefit of the government, not defendants. *See United States v. Maggio,* 514 F.2d 80, 91 (5th Cir. 1975) ("The Bryan requirement that a defendant be placed under oath was to preclude collateral attacks on a guilty plea by a defendant asserting that his representations to the court when he entered the plea were fabricated."), *cert. denied,* 423 U.S. 1032, 96 S.Ct. 563, 46 L.Ed.2d 405 (1975). Hence, even if the Court were to assume that *Bryan* remains

good law, a defendant could only take advantage of a court's failure to swear him during plea proceedings if the defendant were able to demonstrate prejudice. *United States v. Raetzsch,* 781 F.2d 1149, 1151 (5th Cir.1986). No prejudice has been shown.

15. Although the Court has consulted the entire record, it finds the following exchange between defense counsel, the Defendant, and the Magistrate Judge from the hearing on Defendant's motion for new trial to be especially telling regarding the Defendant's lack of veracity:

> Mr. Robles: All right. Now, on the date that you were arrested by the United States Immigration Service, the agents, which was October 7, 2002, did you or did you not come across the river from Mexico, across on that day?
>
> Defendant: I didn't cross the Rio Grande.
>
> Mr. Robles: All right. And is there any particular reason why you came to this court and why you pled guilty to the charge of illegal entry?
>
> Defendant: Well, you know what? I came over here, and I'm a very nervous person. And I was afraid of certain things, and I pled guilty.
>
> Magistrate: Wait a minute. Wait a minute. You're telling me that you were arrested by the Border Patrol with a resident alien card in your pocket and you lied to them and you came and lied to me because you're nervous? Wait a minute. Wait a minute. And according to your card, you've been a resident of this country for

trate Judge's fact finding cannot be said to be clearly erroneous. *See Coury v. Prot,* 85 F.3d 244, 254 (5th Cir.1996) ("The burden of showing that the findings of the district court are clearly erroneous is heavier if the credibility of witnesses is a factor in the trial court's decision."); *United States v. Raetzsch,* 781 F.2d 1149, 1150–51 (5th Cir.1986) (holding in a case in which the defendant was not placed under oath at the time of his plea that a hearing was not even required regarding his subsequent contention that he had lied at the plea hearing).[16] Trial judges have been upheld in similar circumstances. *See, e.g., United States v. Adam,* 296 F.3d 327, 333 (5th Cir.2002) (upholding district judge's crediting of defendant's credibility at plea hearing but discounting veracity of same defendant in change-of-plea proceeding).

Defendant seeks to avoid the effect of his original plea altogether by asserting that there was no "factual basis" in support of his plea and argues on this basis that the Magistrate Judge abused his discretion in accepting it. *Docket No. 12.* The version of Rule 11 in effect when the Defendant pleaded guilty required the Magistrate Judge to make "such inquiry as shall satisfy [the court] that there is a factual basis for the plea" before entering a judgment thereon. FED. R. CRIM. P. 11(f) (superceded Dec. 1, 2002).[17] The Fifth Circuit has explained that the purpose of this requirement is to protect defendants who, though fully understanding the nature of the crime charged, nonetheless might plead guilty because they fail to grasp that their actual conduct does not fall within the parameters of the criminal provision. *United States v. Spruill,* 292 F.3d 207, 215 (5th Cir.2002). Said factual basis must be established on the record and must be specific enough to enable the

---

twelve years? A real resident for twelve years?
Defendant: Yes.

\* \* \* \* \* \*

Defendant: When I was arrested by the agents, I didn't have any documents or any papers in my pocket.
Mr. Robles: When was it that you were nervous? Or was there any reason for you to be scared or in fear of anything at all?
Defendant: Well, it's natural when a policeman or a Border Patrol agent is like— gets in front of you or gets near you. I didn't have my card with me.

\* \* \* \* \* \*

Magistrate: Why? Why? If you were here legally and you just didn't have your card with you, why didn't you just tell them, "My name is Jesus Palomares Sanchez. I'm a resident alien. And, guys, I don't have my card with me." Why did you lie to them about your name?
Defendant: Well, I was afraid because of my card.
The Defendant also purported not to recall whether he had told the Border Patrol agents if he had crossed the Rio Grande at one point during the hearing. In addition, the Defendant admitted to lying about multiple matters

to both those agents and the Magistrate Judge. It is little wonder that the Magistrate Judge chose not to credit the Defendant's testimony.

16. The *Raetzsch* opinion is worth quoting at length:

In *Blackledge v. Allison,* . . . the Supreme Court stated that, "the representations of the defendant, his lawyer, and the prosecutor at . . . a [guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." . . . Thus, there must be independent indicia of the likely merit of the petitioner's contentions, and mere contradiction of his statements at the guilty plea hearing will not carry his burden.

*Raetzsch,* 781 F.2d at 1151.

17. The present version of Rule 11 retains this requirement. *See* FED. R. CRIM. P. 11(b)(3).

court to ascertain whether the defendant's conduct does, in fact, fall within the ambit of the charged criminal offense. *Id.*

■ In keeping with this purpose, the appellate court generally reverses a conviction pursuant to a plea for inadequate factual basis only when the factual basis does not establish the elements necessary for conviction. *See United States v. White,* 258 F.3d 374, 380 (5th Cir.2001) ("[W]e have held that, notwithstanding an unconditional plea of guilty, we will reverse on direct appeal where the factual basis for the plea as shown of record fails to establish an element of the offense of conviction."). But so long as a plea is voluntary, no proof need be put on by the government. In general, " '[i]f sufficiently specific, an indictment or information can be used as the sole source of the factual basis for a guilty plea.' " *United States v. Hinojosa–Lopez,* 130 F.3d 691, 695 (5th Cir. 1997) (quoting *United States v. Adams,* 961 F.2d 505, 509 (5th Cir.1992)). Likewise, a summarization of the facts that the government would prove if so required is also sufficient to form a factual basis for the plea. *Id.* Ultimately, the decision to accept a plea is reviewed for clear error. *United States v. Cano–Guel,* 167 F.3d 900, 906 (5th Cir.1999).

■ In the instant case, the Defendant does not contest that the factual recitation stated in the government's criminal complaint, *Docket No. 1,* is inadequate as a factual predicate to the plea.[18] Rather, the Defendant asserts that the factual recitation was itself false. In other words, De-

fendant claims to have been untruthful with the Border Patrol agent identified in the complaint and with the Magistrate Judge at the initial plea hearing and now, in effect, asserts that the Magistrate Judge should have somehow detected Defendant's prevarication and refused his plea, especially in light of the fact that "[t]here was no evidence to corroborate the defendant's plea of guilty." *Docket No. 12.* As such, Defendant, as a matter of law, does not state a violation of Rule 11(f); rather, Defendant merely reasserts his previously discussed contentions regarding sufficiency of the evidence in another guise. Defendant's claim does not support vacatur or a new trial, because there is no constitutional requirement that a voluntary plea of guilty be corroborated by evidence apart from the government's recitation of facts and defendant's assent thereto. *See Baker v. Estelle,* 715 F.2d 1031, 1036 (5th Cir.1983) ("No federal constitutional issue is raised by the failure of the Texas state court to require evidence of guilt corroborating a voluntary plea."), *cert. denied sub nom. Baker v. McKaskle,* 465 U.S. 1106, 104 S.Ct. 1609, 80 L.Ed.2d 138 (1984).

### D. The Deported Aliens

■ The Defendant also complains on appeal of the government's deportation without deposition of two illegal aliens "who might have produced direct evidence about the salient facts of whether the defendant entered the country or not." *Docket No. 12.* In his motion for new trial, purported objections, and notice of

---

18. In relevant part, the criminal complaint reads:

> On or about October 7, 2002 in Cameron County, in the Southern District of Texas defendant, being then and there and alien, did, willfully, knowingly and unlawfully enter the United States at a place other than designated by the Commissioner of the Immigration and Naturalization Service in vi-

olation of law; in violation of Title 8 United States Code, Section(s) 1325(a)(1).... and that this complaint is based on the following facts: Subject was apprehended near Los Indios, Texas on October 7, 2002. Subject admitted wading the Rio Grande River near Los Indios, Texas on October 7, 2002, thus avoiding inspection.

> *Docket No. 1.*

appeal, Defendant neither generally identifies who these aliens are or what their relation to the Defendant might be nor suggests why they might have relevant information. The tapes from the hearing on Defendant's motion for new trial indicate that one was "the wife of a cousin" and the other was "a first cousin" of the Defendant. The tapes also reflect that the government believes that the Defendant was smuggling these illegal aliens into the country. At his plea hearing, the Defendant admitted as much.[19] During the subsequent hearing, Defendant, on advice of counsel, repeatedly invoked his Fifth Amendment privilege against self-incrimination on this subject.

To the extent that the Defendant raises this issue with regard to whether "there was a factual basis for the plea," see Docket No. 12, the foregoing analysis regarding Rule 11(f) renders Defendant's argument without merit. However, Defendant also claims, more or less, that the government's deportation of these two aliens without deposing them or affording Defendant an opportunity to depose them constitutes a violation of the rule established in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and that said violation requires a new trial. Docket No. 12. In Roviaro, the Court held that "the trial court committed prejudicial error in permitting the Government to withhold the identity" of an informant when said "informer was the sole participant, other than the accused, in the transaction charged" and was "the only witness in a position to amplify or contradict the testimony of government witnesses." Roviaro, 353 U.S. at 64–65, 77 S.Ct. 623.

Roviaro is, however, inapposite. In Roviaro, the Defendant was charged, in part, with selling illegal narcotics to the unidentified and undisclosed informant. Id. at 55, 77 S.Ct. 623. In contrast, the present Defendant was not charged with a crime whose elements depended on his interaction with the two deported illegal aliens. Section 1325(a)(1) of Title 8, the statute under which the Defendant pleaded guilty, does not require the involvement, legally or factually, of other participants. Moreover, in Roviaro, government witnesses described the informant's role in the charged transaction without affording the defense any access to the informant. Id. In contradistinction, during the proceedings involving the present Defendant, the Defendant was not convicted with the aid of testimony regarding a witness that the defense was never allowed to confront. The government put on no testimony regarding the conduct of these two deported aliens or their relation to the Defendant, and in no way used any facts related to these deported aliens in obtaining the Defendant's conviction.[20] Indeed, the govern-

---

19. At the plea hearing, the following exchange between the Magistrate Judge and the Defendant took place:

Magistrate: The government says that all of you violated the law by entering this country illegally in places not designated by the Immigration Service. Are you all guilty of that?

Multiple Defendants: Yes, sir.

\* \* \* \* \* \*

Magistrate: Mr. Rodriguez, they tell me that two government agents saw you pick up two illegal aliens from the brush somewhere ...

Defendant: Yes.

Magistrate: ... near Los Indios. Is that true?

Defendant: Yes.

Magistrate: What do you want to tell me as far as that's concerned?

Defendant: I'm just in your hands.

Magistrate: I'm sorry; I didn't hear you.

Defendant: I'm just in your hands. I do have family. They were family members.

20. Notwithstanding the government's apparent belief that the Defendant was smuggling aliens, the Defendant was never threatened with charges related to that conduct. At the hearing on Defendant's motion for new trial, Defendant testified that he was never ques-

ment obtained the Defendant's conviction via an admission of guilt and plea on the part of the Defendant, not via the testimony of others. In short, *Roviaro* is nothing like the present case.

### E. Denial of Motion for New Trial

 Finally, Defendant contends without much in the way of argument that the Magistrate Judge abused his discretion in denying Defendant's motion for new trial. The Defendant does correctly state the standard of review. *United States v. Jaramillo,* 42 F.3d 920, 924 (5th Cir.1995), *cert. denied,* 514 U.S. 1134, 115 S.Ct. 2014, 131 L.Ed.2d 1013 (1995). In addition to this deferential standard of review, motions for new trial based, as here, on newly discovered evidence,[21] are disfavored and viewed with great caution. *Id.* Accordingly, the Fifth Circuit has established a rather strenuous multi-factor test for obtaining a new trial under FED. R. CRIM. P. 33. A defendant must prove that:

> (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal. The motion for new trial must be denied if all parts of this test are not satisfied.

*Jaramillo,* 42 F.3d at 924–25. Defendant does not satisfy or attempt to satisfy these factors anywhere in the record. Moreover, given the nature of the Defendant's "new evidence," Defendant is incapable of meeting the governing standard. His status as a permanent resident is immaterial; it is difficult to believe that Defendant was unaware of this status at the time of trial; and this information is, as a matter of law,

incapable of producing an acquittal at a new trial. Likewise, Defendant's present denial of the factual recitation in the criminal complaint, to which he assented when he entered his plea of guilty, and his subsequent change of story constitutes an admission of intentional dishonesty, which could not satisfy the first two elements enumerated in *Jaramillo;* taking Defendant's averments at face value, it would seem farfetched to this Court that a defendant's decision to tell the truth after having lied at trial could ever be considered newly discovered evidence. Defendant adverts to no other new evidence that might satisfy the requisite standard. Accordingly, the Magistrate Judge's denial of Defendant's motion for new trial was proper.

### VIII. CONCLUSION

For the forgoing reasons, the Defendant's conviction is **AFFIRMED.**

---

tioned about felony charges nor threatened with felony charges.

**21.** *See supra* Part II.A.